# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

        Plaintiff,

vs.                                                                                  No. CR 19-3725 JB

JODY RUFINO MARTINEZ,

        Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on the Defendant's Motion to Sever Offenses, filed December 12, 2019 (Doc. 36)("Motion."). The Court held a hearing on December 12 and 13, 2019. See Clerk's Minutes at 1, filed December 12, 2019 (Doc. 50). The primary issue is whether the Court should sever Martinez' felon-in-possession of a firearm charge from his racketeering conspiracy charge under rule 14 of the Federal Rules of Criminal Procedure, because (i) the Superseding Indictment, filed December 11, 2019 (Doc. 32)("First Superseding Indictment"), has not reset the Speedy Trial Act clock for the felon-in-possession charge, and the Speedy Trial Act, therefore, requires that he be tried on the felon-in-possession charge by his original trial date; and (ii) evidence related to the racketeering conspiracy charge will be prejudicial to his felon-in-possession charge. The Court concludes that (i) the Speedy Trial Act clock (a) did not expire by the time the Court heard and orally denied the Motion; and (b) has not been violated, because, although the First Superseding Indictment does not reset the Speedy Trial Act clock for

---

[1]At the December 13, 2019, pretrial conference, the Court orally denied Defendant Jody Rufino Martinez Motion to Sever Offenses, filed December 12, 2019 (Doc. 36). See Transcript of Pretrial Conference at 43:7-12 (Court), filed December 30, 2019 (Doc. 49). This Memorandum Opinion and Order ("MOO") explains the Court's oral decision.

the felon-in-possession charge, the pretrial motions tolled the Speedy Trial Act clock; the Court granted two continuances; and the Court declared the case complex; and (ii) although the probative value of evidence of gang affiliation or membership is often low, and the substantial danger of unfair prejudice to Martinez may outweigh the probative value of the gang affiliation or membership evidence, it is too early to determine whether the Court would exclude the evidence in a stand-alone felon-in-possession charge on the limited record before the Court. Accordingly, because the Court cannot, at this early point, definitively determine whether it would exclude the evidence of gang affiliation or membership, and cannot, therefore, definitively conclude whether the evidence would be prejudicial sufficiently to warrant severance under rule 14, the Court will deny the Motion without prejudice to allow Martinez to renew his severance motion with a robust motion in limine closer to trial, if Martinez still wants the charges severed.

## FACTUAL BACKGROUND

The Court takes its background facts from the First Superseding Indictment, filed December 11, 2019 (Doc. 33). Accord Second Superseding Indictment, filed January 9, 2020 (Doc. 56)(stating the same background facts as the First Superseding Indictment). The Court does not set forth these facts as findings or for their truth. The Court recognizes that the factual background is largely Plaintiff United States of America's version of events and that Martinez is presumed innocent.

### 1.    General Background on the SNM Gang.

This case deals with the crimes that the Sindicato de Nuevo Mexico (Spanish for Syndicate of New Mexico)("SNM") allegedly committed through its members. See First Superseding Indictment ¶¶ 1, 3, at 1-2. The SNM, through its members, operated in the District of New Mexico at all relevant times, and its members engaged in acts of violence and other criminal activities, "including, murder, kidnapping, attempted murder, conspiracy to manufacture/distribute narcotics,

and firearms trafficking."  First Superseding Indictment ¶ 1, at 1.  The SNM constitutes an enterprise "as defined in Title 18, United States Code, Sections 1959(b)(2) and 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected interstate and foreign commerce."  First Superseding Indictment ¶ 2, at 2.  The enterprise is "an ongoing organization whose members/prospects/associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise."  First Superseding Indictment ¶ 2, at 1-2.

The SNM is a prison gang formed in the early 1980s at the Penitentiary of New Mexico ("PNM") after a violent prison riot at PNM, during which inmates seriously assaulted and raped twelve correctional officers after taking them hostage.  First Superseding Indictment ¶ 3, at 2.  During the riot, thirty-three inmates were killed, and over 200 inmates were injured.  See First Superseding Indictment ¶ 3, at 2.  After the PNM riot, the SNM expanded throughout the state's prison system and has had as many as 500 members at once.  See First Superseding Indictment ¶ 4, at 2.  The SNM now has approximately 250 members, and "a 'panel' or 'mesa' (Spanish for table) of leaders who issue orders to subordinate gang members."  First Superseding Indictment ¶ 4, at 2.  The SNM controls drug distribution and other illegal activities within the New Mexico penal system, but it also conveys orders outside the prison system.  See First Superseding Indictment ¶¶ 3, 5, at 2-3.  Members who rejoin their communities after completing their sentences are expected to further the gang's goals, primarily the control of, and the profit from, narcotics trafficking.  See First Superseding Indictment ¶ 5, at 3.  Members who fail "to show continued loyalty to the gang" may be assaulted or murdered.  Indictment ¶ 5, at 3.  The SNM also intimidates and influences smaller New Mexico Hispanic gangs to expand its illegal activities.  See First Superseding Indictment ¶ 6, at 3.  If another gang does not abide by the SNM's demands, the SNM

will assault or kill one of the other gang's members to show SNM's power.  <u>See</u> First Superseding Indictment ¶ 6, at 3.  The SNM's rivalry with other gangs also manifests itself in beatings and stabbings within the prison system. <u>See</u> First Superseding Indictment ¶ 7, at 3.  The SNM further engages in violence "to assert its gang identity, to claim or protect its territory, to challenge or respond to challenges, to retaliate against a rival gang or member, [and] to gain notoriety and show its superiority over others."  First Superseding Indictment ¶ 7, at 4. "Similarly, a member of the SNM Gang is expected to confront and attack any suspected law enforcement informants, cooperating witness[es], [gay people], or sex offenders."  First Superseding Indictment ¶ 8, at 4.  To achieve its purpose of maintaining power, the SNM uses intimidation, violence, threats of violence, assault, and murder.  <u>See</u> First Superseding Indictment ¶¶ 6-8, at 3-4.  The SNM, as an enterprise, generates income by having its members and associates traffic controlled substances and extort narcotic traffickers.  <u>See</u> First Superseding Indictment ¶ 7, at 4. The SNM's recent activities in a conspiracy to murder high-ranking New Mexico Corrections Department officials inspired the Federal Bureau of Investigation's present investigation.  <u>See</u> United States Notice of Related Cases, filed October 16, 2019 (Doc. 15).[2]  <u>See also</u> <u>United States v. DeLeon</u>, No. CR 15-

---

[2]The United States asserts that this case

is related to the subject matter in the following cases:

1.    <u>U.S. v. Angel DeLeon, et al.</u>, Criminal No. 15-4268 JB

2.    <u>U.S. v. Anthony Baca et al.</u>, Criminal No. 16-1613 JB

3.    <u>U.S. v. Jonathan Gomez, a.k.a. "Baby G,"</u> Case No. 19-MJ-3189

4.    <u>U.S. v. Gary Coca</u>, Case No. 19-MJ-3023

5.    <u>U.S. v. Gregory Montoya, a.k.a. "Jinx,"</u> Case No. 19-MJ-3231

6.    <u>U.S. v. Anthony Paul Salazar</u>, Case No. 19-MJ-3233

4268 (D.N.M.)(Browning, J.); <u>United States v. Baca</u>, No. CR 16-1613 (D.N.M.)(Browning, J.)(involving twelve defendants, all alleged SNM members or associates, who have allegedly engaged in a racketeering conspiracy, under 18 U.S.C. § 1962(d)); <u>United States of America v. Garcia</u>, No. CR 15-4275 (D.N.M.)(Browning, J.)(involving a separate prosecution of C. Garcia for drug crimes); <u>United States v. Varela</u>, No. CR 15-4269 (D.N.M.)(Browning, J.)(a four-defendant prosecution for alleged violent crimes in aid of racketeering, under 18 U.S.C. § 1959); <u>United States v. Gallegos</u>, No. CR 16-429 (D.N.M.)(Browning, J.)(involving a defendant severed from <u>United States v. Baca</u>).

### 2. **The First Superseding Indictment.**

The First Superseding Indictment charges Martinez with two counts. <u>See</u> First Superseding Indictment at 1-12. Count 1 charges Martinez, as a member of the SNM Gang since 1980, together with other people associated with the SNM Gang, with "conspir[ing] to . . . conduct and participate, directly and indirectly, in the conduct of the affairs of the SNM Gang enterprise through a pattern of racketeering activity." First Superseding Indictment at 7. The First Superseding Indictment alleges that Martinez and "others known and unknown to the Grand Jury" committed sixteen "overt acts . . . in furtherance of the conspiracy, and to accomplish the goals of the conspiracy." First Superseding Indictment at 8-11. The alleged sixteen overt acts are:

(i) "In 1980, a group of inmates at the Penitentiary of New Mexico formed the SNM

---

7. <u>U.S. v. Leopoldo Salazar</u>, Case No. 19-MJ-3232

8. <u>U.S. v. Robert Trujillo</u>, Case No. 19-MJ-2999

United States Notice of Related Cases, filed October 16, 2019 (Doc. 15). The Court held two trials in <u>U.S. v. DeLeon</u>, No. CR 15-4268. In the end, the Court held one four-defendant trial ("First DeLeon Trial") and one seven-defendant trial ("Second DeLeon Trial"). Across these two trials, the juries found eight of the eleven <u>DeLeon</u> Defendants guilty of violating VICAR. <u>See</u> <u>DeLeon</u>, No. CR 15-4268, Jury Verdict at 1-3, filed March 12, 2018 (Doc. 1947); <u>DeLeon</u>, No. CR 15-4268, Jury Verdict at 1-5, filed May 25, 2018 (Doc. 2332).

Gang";

(ii)     "Beginning in the 1980s, the SNM Gang designated the prison gangs, Los Carnales and the Nortenos, as their rivals and issued orders to the SNM Gang to assault their rivals whenever possible";

(iii)    "Beginning in the 1980s and continuing up to the present time, the SNM Gang established a hierarchy within the gang, rules, and procedures, and recruited street gang members and inmates from around New Mexico to commit and aid of" various crimes;

(iv)     "On or about June 1998, while incarcerated in the NMCD, **JODY RUFFINO MARTINEZ** was recruited and joined the SNM Gang in Milan, New Mexico";

(v)      "On or about December 22, 1998, while incarcerated in the NMCD, **JODY RUFFINO MARTINEZ** admitted his SNM Gang membership to NMCD officials and claimed he was a Soldier within the SNM";

(vi)     "On or about December 22, 1998, while incarcerated in the NMCD, **JODY RUFFINO MARTINEZ** possessed an SNM tattoo of a Zia symbol with 'SNM' in the middle";

(vii)    "On or about April 1, 1999, while incarcerated in the NMCD, **JODY RUFFINO MARTINEZ** possessed a drawing with 'SNM' and 'S' on it";

(viii)   "On or about April 1, 1999, while incarcerated in the NMCD, **JODY RUFFINO MARTINEZ** possessed names and addresses of SNM members and associates and an amnesty agreement between Barrio Azteca Gang and SNM Gang";

(ix)     "On or about October 31, 1999, while incarcerated in the NMCD, **JODY RUFFINO MARTINEZ** battered a corrections officer";

(x)      "On or about March 12, 2008, **JODY RUFFINO MARTINEZ** attempted to commit a robbery with another SNM Gang member and another individual affiliated with a street gang";

(xi)     "On or about June 12, 2015, **JODY RUFFINO MARTINEZ** possessed a handgun, heroin, and methamphetamine";

(xii)     "On or about November 5, 2016, while incarcerated in the NMCD, **JODY RUFFINO MARTINEZ** and J.M., another SNM member, assaulted R.D. **JODY RUFFINO MARTINEZ** and J.M. were later heard saying they 'should have just stuck him'";

(xiii)     "On or about October 24, 2018, **JODY RUFFINO MARTINEZ** possessed a firearm and ammunition";

(xiv)     "On or about October 24, 2018, **JODY RUFFINO MARTINEZ** did unlawfully and knowingly shoot a rival, D.S.";

(xv)     "Between October 24, 2018 and June 7, 2019, **JODY RUFFINO MARTINEZ** did attempt to intimidate witness, L.L., by trying to persuade the witness not to cooperate with law enforcement about the shooting incident"; and

(xvi)     "On or about January 7, 2019, S.B., **JODY RUFFINO MARTINEZ'** girlfriend, retaliated against D.S. for cooperating with law enforcement following the shooting.  S.B. provided paperwork to an inmate in the Rio Arriba County Detention Facility regarding D.S.'s cooperation, and D.S. was subsequently assaulted by inmates at the facility."

First Superseding Indictment at 9-11 (emphasis and capitalization in the original).  Count 2 charges Martinez, having already been convicted of a prior felony, with knowingly possessing a firearm

and ammunition in and affecting commerce on October 24, 2018.  <u>See</u> First Superseding

Indictment at 11-12.

     **3.**     **<u>The Second Superseding Indictment</u>.**

     The Second Superseding Indictment charges Martinez with four counts, adding two

additional counts to the ones in the First Superseding Indictment.  <u>See</u> Second Superseding

Indictment at 1-14.  Count 1 charges Martinez with the murder of D.R., alleging:

> On or about December 5, 2008, in Rio Arriba County, in the District of New Mexico, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing the position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise in racketeering activity, the defendant, **JODY RUFINO MARTINEZ, a.k.a. "Mono,"** did unlawfully, knowingly, and intentionally murder D.R., in violation of NMSA 1978, Sections 30-2-1 and 301-113.
>
> All in violation of 18 U.S.C. §§ 1959(a)(1) and (2).

Second Superseding Indictment at 7-8.  Count 1 also includes a notice of special findings, alleging

that (i) Martinez was older than eighteen years at the time he murdered D.R., <u>see</u> 18 U.S.C. §

3591(a); (ii) Martinez "intentionally killed D.R. (18 U.S.C. § 3591(a)(2)(A))"; (iii) Martinez

"intentionally inflicted serious bodily injury that resulted in the death of D.R. (18 U.S.C. § 3591

(a)(2)(B))"; (iv) Martinez "has a previous conviction for a violent felony involving firearms (18

U.S.C. § 3592(c)(2))"; (v) Martinez "has previous convictions of other serious offenses (18 U.S.C.

§ 3592(c)(4))"; and (vi) Martinez "committed the offense after substantial planning and

premeditation to cause the death of D.R. (18 U.S.C. § 3592(c)(9))."  Second Superseding

Indictment at 8.

     Count 2 charges Martinez, as a member of the SNM Gang since 1980, together with other

people associated with the SNM Gang, with "conspir[ing] to . . . conduct and participate, directly

and indirectly, in the conduct of the affairs of the SNM Gang enterprise through a pattern of

racketeering activity."  Second Superseding Indictment at 9.  The Second Superseding Indictment alleges that Martinez and "others known and unknown to the Grand Jury" committed nineteen "overt acts . . . in furtherance of the conspiracy, and to accomplish the goals of the conspiracy." Second Superseding Indictment at 10-13. Sixteen of the nineteen overt acts in the Second Superseding Indictment are the same as those in the First Superseding Indictment; the Second Superseding Indictment adds an additional three overt acts, alleging that: (i) "[o]n or about December 5, 2008, **JODY RUFINO MARTINEZ** killed D.R. for failing to deliver drugs to an SNM gang member"; (ii) "[i]n October 2019, while incarcerated in the Santa Fe County Adult Detention facility, **JODY RUFINO MARTINEZ**, placed a 'green light' on D.S. and intended to have D.S. killed"; and (iii) "[o]n or about December 12, 2019, while incarcerated in the Santa Fe County Adult Detention Facility, **JODY RUFINO MARTINEZ**, threatened physical force against J.L. with the intent to influence, delay, or prevent J.L. from testifying against **JODY RUFINO MARTINEZ** in an official proceeding."  Second Superseding Indictment at 10-13 (Overt Acts 11, 18, and 19).

Count 3 charges Martinez with tampering with a witness, alleging that, on or about December 12, 2019, Martinez "used and attempted to use physical force and the threat of physical force against J.L. with the intent to influence, delay, or prevent J.L. from testifying against **RUFINO MARTINEZ** in an official proceeding."  Second Superseding Indictment at 13 (citing 18 U.S.C. § 1512(a)(2)(A)).  Count 4 of the Second Superseding Indictment, as with the First Superseding Indictment, charges Martinez, having already been convicted of a prior felony, with knowingly possessing a firearm and ammunition in and affecting commerce on or about October 24, 2018.  See Second Superseding Indictment at 13-14.

## PROCEDURAL BACKGROUND

1.      **The Complaint, the Indictment, and the First Superseding Indictment.**

On August 23, 2019, the United States filed the Criminal Complaint (Doc. 1)("Complaint"). The Complaint alleges that Rufino Jody Martinez violated 18 U.S.C. § 922(g)(1): Felon-in-Possession of a Firearm. See Complaint at 1. Martinez was arrested on September 19, 2019. See Arrest Warrant Returned Executed, filed September 19, 2019 (Doc. 7).

The United States filed the Indictment on October 16, 2019 (Doc. 16). The Indictment charges Martinez with violating 18 U.S.C. §§ 922(g)(1) and 924: Felon-in-Possession of a Firearm and Ammunition. See Indictment at 1. Martinez pleaded not guilty at his arraignment, see Clerk's Minutes at 1, filed October 23, 2019 (Doc. 19), and the Court scheduled a jury trial on Martinez' charges beginning on December 16, 2019, see Notice of Jury Selection/Jury Trial at 1, filed October 24, 2019 (Doc. 21). On December 11, 2019, the United States filed the First Superseding Indictment, charging Martinez with two counts: (i) Count 1: 18 U.S.C. § 1962(d): Racketeering Conspiracy; and (ii) 18 U.S.C. §§ 922(g)(1) and 924: Felon-in-Possession of a Firearm and Ammunition. See First Superseding Indictment at 1-12

2.      **The December 12 Pretrial Conference.**

The Court held a pretrial conference on December 12, 2020, in advance of the trial set for December 16, 2020. See Transcript of Pretrial Conference, filed December 30, 2019 (Doc. 48)("Dec. 12 Tr."). The Court began the hearing by asking the parties what they expected the length of the trial to be, given that the First Superseding Indictment had been filed that morning. See Dec. 12 Tr. at 2:19-25 (Court). The United States stated it estimates a three-week trial. See Dec. 12 Tr. at 3:1-2 (Armijo). Martinez stated that "we agreed on a full week . . . for the felon-in-possession," Dec. 12 Tr. at 3:5-7 (Harrison), but that he had not been served with the First

Superseding Indictment yet, but that he planned to move to sever, see Dec. 12 Tr. at 4:10-13 (Harrison).

Martinez argued that he does not "think that it's appropriate [for the] Government to supersede at this point and . . . effectively deny Mr. Martinez his Speedy Trial rights[3] on the case that's been set for December 16 from the very first setting that we've worked really rather strenuously to maintain." Dec. 12 Tr. at 6:8-13 (Harrison). The United States responded, arguing that "under rule 8(a) it is properly joined. Part of the facts of the felon-in-possession are an overt act for RICO[4] conspiracy." Dec. 12 Tr. at 6:17-19 (Armijo). The United States stated that it had "told [Martinez] that [the United States was] looking at bringing more serious charges," and Martinez "indicated that if [the United States] filed additional charges then he would be in a position where he would be forced to continue the case given the nature of the charges." Dec. 12 Tr. at 7:1-11 (Armijo). The United States stated that counsel for Martinez had "represented to me that if this case were indicted with more serious charges, then he would may have to continue the

---

[3]Speedy Trial Act, 18 U.S.C. § 3161(c)(1), reads in relevant part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate judge on a complaint, the trial shall commence within seventy days from the date of such consent.

18 U.S.C. § 3161(c)(1).

[4]The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961-68 ("RICO"), prohibits specific activities when they are committed in connection with a pattern of racketeering activity. E.g., 18 U.S.C. § 1962(b)("It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.").

case." Dec. 12 Tr. at 11:20-23 (Armijo).

The Court then asked whether there is "any reason to sever counts one and two?" Dec. 12

Tr. at 11:25 (Court). The Court stated its position: .

> [F]rom an observer's standpoint the racketeering conspiracy is . . . the much more serious charge in this case. And having sat through three racketeering trials last year, I can't imagine the charge of just felon-in-possession being very prejudicial, given the evidence that's going to come in. Is there a reason to sever this case?

Dec. 12 Tr. at 12:1-8 (Court). The United States responded that "[n]ot only is the felon-in-

possession racketeering activity, but also the facts that surrounding the felon-in-possession, which

is a shooting, is part of [the] overt acts" for the racketeering conspiracy charge. Dec. 12 Tr. at

13:4-7 (Armijo). The United States explained that it was going to prove the felon-in-possession

elements it either in a separate trial or in a RICO trial, and stated that the Court would hear the

same evidence in both cases, and that severing the two counts "it will subject [witness'] who have

already been subject to witness intimidation to testify twice against what the United States beliefs

an SNM Gang member." Dec. 12 Tr. at 13:8-20 (Armijo, Court).

Martinez responded, stating that he would like to brief the issue on an expedited basis. See

Dec. 12 Tr. at 13:23-25 (Harrison). Martinez argued that a

> felon-in-possession is not a predicate for a racketeering patterns, it is a serious independent case. [Martinez] is eligible for punishment under the Armed Career Criminal Act, which is a 15-year mandatory minimum rather than a 10-year maximum, making it a significantly more serious case.
>
>     There are prejudicial facts that we believe to be unrelated to any alleged affiliation with SNM, and more to the point, this is the eve of trial and we think that in and of itself provides a basis to sever out the counts.

Dec. 12 Tr. at 13:25-14:10 (Harrison).

The Court stated that it was "not going to prejudge a motion to sever, but on the basis of

what I've heard, and given my familiarity with the SNM cases and having tried three of them last

year, I'm not thinking of a good reason to sever this case." Dec. 12 Tr. at 15:13-17 (Court). The

Court ended the hearing and continued the hearing for the next day.  See Dec. 12 Tr. at 67:17-24 (Court).

### 3. **The Motion.**

On December 12, 2019, after the pretrial conference, Martinez filed the Motion.  See Motion at 1.  Martinez argues that the Court should sever Count 1 from Count 2 for trial.  See Motion at 3.  Martinez argues that that the offenses should be severed for two reasons: (i) the First Superseding Indictment forces Martinez to "either waive the at-most-70-days Speedy Trial Act protection for the felon-in-possession charge, or waive the at-least-30-days Speedy Trial Act protection for the RICO Conspiracy charge"; and (ii) the Racketeering Conspiracy charge prejudices Martinez, because Martinez contends that that "evidence of gang affiliation or membership is generally inadmissible evidence to prove any element of the felon-in-possession charge."  Motion at 3.  Martinez contends that rule 14(a) of the Federal Rules of Criminal Procedure allows a court to sever offenses if joinder "'appears to prejudice a defendant or the government.'"  Motion at 3 (quoting Fed. R. Crim. P. 14(a)).  Martinez explains that "'[p]rejudicial joinder occurs under Rule 14 when an individual's right to a fair trial is threatened or actually deprived.'"  Motion at 3 (quoting United States v. Johnson, 130 F.3d 1420, 1427 (10th Cir. 1997)).

Martinez argues that, if the Court does not sever his offenses, his rights under the Speedy Trial Act will be violated.  See Motion at 4.  Martinez contends that when he was charged, through an indictment, as a felon-in-possession of a firearm or ammunition on October 16, 2019, he must be tried within seventy days -- by December 25, 2019 -- under 18 U.S.C. § 3161(c)(1).  See Motion at 4. Martinez argues that that when the United States filed the First Superseding Indictment on December 11, 2019, which kept the original charge and added an additional charge, the "Speedy Trial Act does not reset the Speedy Trial Clock for the charge contained in the original indictment."

Motion at 4 (citing United States v. Trammer, 2019 WL 3843046, at *2 (D.N.M. Aug. 12, 2019)(Vazquez, J.)).  Martinez argues that he has the "right to pursue a speedy trial without waiving the ability to challenge his right to seek a trial preparation period for the new charges." Motion at 5 (citing United States v. Baca, 2016 WL 6404772, at * 31 (D.N.M. Oct. 20, 2016)(Browning, J.)). Martinez argues that he is ready to proceed to trial on his felon-in-possession charge, because "[d]iscovery is complete regarding the felon-in possession-charge.   Mr. Martinez's counsel has diligently and actively prepared his defense for that matter, and the defense is ready and waiting to go to trial."  Motion at 5.  Martinez also argues that that "delaying this trial runs the risk that Mr. Martinez might lose access to these key witnesses as related to the felon-in-possession charge."  Motion at 6 (citing 22A Corpus Juris Secundum, Crim. Pro. § 554).

Next, Martinez argues that Racketeering Conspiracy charge "will involve enormous amounts of highly prejudicial evidence of prior bad acts . . . and guilt by association . . . none of which are remotely relevant to the felon-in-possession case."  Motion at 6.  Martinez argues that the charges should be severed, because "evidence of gang affiliation 'generally arouse[s] negative connotations and often invoke images of criminal activity and deviant behavior . . . [g]uilt by association is a genuine concern whenever gang evidence is admitted.'"  Motion at 6 (quoting United States v. Montgomery, 390 F.3d 1013, 1018 (7th Cir. 2004)).  Martinez contends that evidence of gang affiliation or membership is irrelevant to the felon-in-possession charge and should therefore be excluded.  See Motion at 7 (citing Fed. R. Evid. 401 & 402).  Martinez maintains that gang affiliation is not relevant because "violating 18 U.S.C. § 922(g)'s prohibition on felons possessing firearms . . . is not a racketeering-pattern predicate for RICO purposes," and he intends to stipulate that he is a felon; therefore, gang affiliation "cannot be relied upon to show that it is more likely than not that he committed a crime or that he possessed a firearm."  Motion

7-8.

Next, Martinez contends that any evidence related to gang affiliation should be excluded because the probative value of that evidence is outweighed by unfair prejudice.  See Motion at 10 (citing Fed. R. Evid. 403 and United States v. Archuleta, 737 F.3d 1287, 1292 (10th Cir. 2013)). Martinez argues that "there is a high risk that the jury might use evidence of gang affiliation to conclude that Mr. Martinez possessed a firearm, rather than consider the United States' evidence against him. Such a risk creates a danger of unfair prejudice that substantially outweighs its probative value." Motion at 10 (citing Old Chief v. United States, 519 U.S. 172, 191-92 (1997); United States v. Hartfield, 976 F.2d 1349, 1352 (10th Cir. 1992); United States v. Keys, 899 F.2d 983, 986-88 (10th Cir. 1990)).  Martinez argues that he may stipulate that he is a felon, and if he stipulates, that "stipulation greatly decreases any probative value associated with evidence of gang membership, because such evidence no longer can be used as circumstantial evidence that Mr. Martinez was convicted of a felony in the past."  Motion at 11-12.

### 4.     The Motion to Continue.

Later that day, the United States filed a Motion to Continue Trial, filed December 12, 2020, (Doc. 35).  The United States explains as background that (i) the United States charged Martinez by the Indictment on October 16, 2020, with a charge as a felon-in-possession; (ii) trial is scheduled for December 16, 2020; and (iii) the United States charged Martinez by the First Superseding Indictment on December 11, 2020, with charges of felon-in-possession and racketeering conspiracy.  See Motion to Continue Trial at 1-2.  The United States requests a "a continuance of the trial of no less than thirty days from the current setting," because (i) the United States needs to disclose approximately ninety thousand pages of discovery on the racketeering charge; (ii) the United States needs to have a protective order in place, before disclosure can take place; (iii)

Martinez's right to effective assistance of counsel includes adequate time to prepare for trial; (iv) "[a]dditional time will not prejudice the Defendant"; (v) additional time "will permit him additional time to prepare and file pretrial motions, to further investigate this case, and to prepare for trial" given the large amounts of discovery; and (vi) the "Defense counsel has indicated that the Defendant will consent to the continuance if the Defendant's forthcoming motion to sever is denied by the Court."  Motion to Continue Trial at 2-3.

### 5. __The December 13 Pretrial Conference.__

On December 13, 2020, the Court held a pretrial conference continued from the day before. See Transcript of Pretrial Conference, filed December 30, 2019 (Doc. 49)("Dec. 13 Tr.").  The Court noted that the day before, after the pretrial conference, the United States had filed the Motion to Continue Trial and that Martinez had filed the Motion, and the Court asked how the parties wanted to proceed at the hearing.  See Dec. 13 Tr. at 2:21-3:11 (Court).  The United States stated that it would make sense for the Court to rule on the Motion first, then the continuance, because the United States' "understanding is that if the Court denies the motion to sever that the Defendant will consent for the continuance of the trial."  Dec. 13 Tr. at 3:12-15 (Castellano).  Martinez stated that he "need[ed] the motion to sever resolved."  Dec. 13 Tr. at 3:21-22 (Harrison).

The Court summarized the legal standard: "While a superseding indictment does not reset the speedy trial clock for offenses already charged or required to be joined with those charges in the original indictment, the time period between a superseding indictment and trial can be excluded from the Speedy Trial Act calculation.."  Dec. 13 Tr. at 6:5-10 (Court).  The Court explained that the United States Court of Appeals for the Tenth Circuit, in United States v. Olivo, 69 F.3d 1057, 1061 (10th Cir. 1995),

> concluded that the period of time between the superseding indictment and the start of the trial would be excluded from the speedy trial calculation.  In doing so, the

Tenth Circuit determined whether the delay occasioned by the filing of the superseding indictment is reasonable under [18 U.S.C. §] 3161(h)(7). The reasonableness of a delay depends upon the relevant circumstances. And the Court considers three relevant circumstances. When examining the relevant circumstances, the first factor to consider is efficiency. The second factor the Tenth Circuit considers is whether the defendant zealously pursued speedy trial. And I think in this case we have to say that Mr. Martinez has zealously pursued speedy trial, so that factor leans in his favor. The third factor that the Tenth Circuit considers [is whether] . . . the superseding indictment did more than gild the original count. Charges that are factually and legally distinguishable from those charges brought in the original indictment do more than simply gild the original indictment. So I'm inclined to think this one is more than gilding.

In a footnote in his opening brief in the Ray case, [United States v. Ray, 899 F.3d 852 (10th Cir. 2018)], Ray insisted that the superseding indictment didn't reset his speedy trial clock. But arguments made in -- the Tenth Circuit said that arguments made in a cursory manner, such as a footnote, are waived. And it said, "Even if we agreed to address this waived argument on the merits, we would reject it. As a general rule, new Speedy Trial Act periods begin to run with respect to an information or indictment adding a new charge not required to be brought in the original indictment. But when the later charge is merely a part of or only gilds the initial charge, the subsequent charge is subject to the same Speedy Trial Act limitations imposed on the earlier indictment."

And then they said here the original indictment alleged that Ray conspired to prepare false returns for others. So, . . . I think that . . . this case could go up if we tried these two counts together . . . . But I do think that there is an argument to be made that if the Tenth Circuit is continuing to apply these . . . three factors, that first, the felon-in-possession has not changed, and so that one is still subject to Speedy Trial Act.

Now, if the Tenth Circuit is abandoning the three factors, then the latest case which didn't apply them would suggest that, you know, if the indictment is not just gilding but adding new charges, then the Speedy Trial Act is reset. I'm concerned about -- you know, I think it runs some danger that if we were to continue the trial, that the felon-in-possession might well be subject to a motion to dismiss on Speedy Trial Act grounds. I'm concerned about that.

Dec. 13 Tr. at 6:12-9:2 (Court). The Court then asked Martinez to argue in support of his Motion.

See Dec. 13 Tr. at 9:3-6 (Court).

Martinez argued that his case is more like United States v. Mora, 135 F.3d 1351 (10th Cir. 1998), than United States v. Ray, 899 F.3d 852 (10th Cir. 2018), because he is "not asserting today

that the Speedy Trial Act . . . original deadline attaches to the RICO charge."  Dec. 13 Tr. at 9:7-13 (Hart).  Martinez contended that in United States v. Ray, the "defendant was trying to say everything gets subject to the original speedy trial deadline."  Dec. 13 Tr. at 9:15-19 (Hart).  Martinez agreed with the Court that there is no danger that the Speedy Trial Act has run or is about to run on the racketeering conspiracy charge; the issue is whether the seventy-day Speedy Trial clock terminates for the felon-in-possession charge.  See Dec. 13 Tr. at 9:20-10:3 (Court, Hart).  Martinez argued that his case is similar to United States v. Mora, where a First Superseding Indictment added a charge, but did not change the original charge, and, "on appeal, the defendant raised the issue that the conviction should be vacated for the original charge, because the First Superseding Indictment didn't toll."  Dec. 13 Tr. at 10:3-11 (Hart).  Martinez contended that his case is similar to the "severance of Richard Gallegos, which this Court ordered in one of the other SNM trials in" United States v. Baca, 899 F.3d 852, where "this Court determined that because the defendant was prepared to go to trial, because discovery was complete, because that defendant's counsel had represented him in the prior case, . . . that defendant waiting to go the trial with his other joined defendants," Dec. 13 Tr. at 10:18-11:2 (Hart).  The Court disagreed, stating that United States v. Baca "was a little different," because there it was a defendant severed from the case, whereas "here, I've got the same defendant, just new charges.  So, I'm not sure that's comparable with what was going on in that case."  Dec. 13 Tr. at 11:3-7 (Court).  Martinez responded, contending that here it is "undisputed so far that discovery is complete in the felon-in-possession case; that Mr. Martinez is ready to go to trial in the felon-in-possession case."  Dec. 13 Tr. at 11:17-22 (Hart).  The Court stated that Martinez' situation is "very different than what was going on in the Gallegos situation," in United States v. Baca, "where . . . [the] defendant wanted an entire trial on all the charges that were [t]here.  . . . [T]hat seems very different than when the

defendant wants to bifurcate charges against him." Dec. 13 Tr. at 11:23-12:7 (Court).

Martinez argued that

> the Speedy Trial Act makes clear that he has a right to go to trial on this charge separate[ly] . . .  [H]e has a right to go to trial on this charge and he is not prepared, he said, to waive that.  He said yesterday he wants to go to trial on this charge. By granting a continuance on this charge or allowing them to be tried together at a later date because of the conduct of the Government in charging this case, it's setting it -- it would be a Speedy Trial Act violation. . . .

> Mr. Martinez has to choose [between] waiv[ing] his right to a speedy trial within 70 days, or is he going to waive his right to pursue trial preparation and everything else that he has under the Speedy Trial Act, under all the rights that he potentially has under the Speedy Trial Act for the second charge in order to protect his speedy trial rights for the first?  It's putting him in an impossible situation where he has to waive his rights in one case, in one charge, no matter what, in order to assert them in the other.

> And I think in a situation like that, as is recognized in some of the treatises and other issues that we cited, in . . . a situation where that Speedy Trial Act violation could occur, that's prejudice to him.  That prejudice would be a valid reason to sever out the offenses in this one case.

Dec. 13 Tr. at 12:8-13:12 (Hart).

The United States responded, arguing that the superseding indictment incorporates the felon-in-possession charge as part of the racketeering conspiracy charge in overt acts thirteen through sixteen.  See Dec. 13 Tr. at 14:8-14 (Castellano).  The United States also argued that "Gallegos doesn't apply to this case," because Gallegos was severed under rule 8(b), "not 8(a), because it was a severance of defendants as opposed to severance of charges."  Dec. 13 Tr. at 14:15-22 (Castellano).  The United States also stated that the

> motion to sever . . . is tied to the Speedy Trial issue, because even if the Court says that that the felon-in-possession charge is running on its own timeline from the original indictment, if the Court denies the severance motion, the defendant has consented to a continuance of a case. . . .

> [T]he defense has also filed a motion in this case. Motions also toll the Speedy Trial clock.  So we're off of the clock on the motion [to sever] until the Court resolves that matter [and the] [United States] ha[s]n't had a chance to brief it. . . .  Any motion like this would [toll the] time, and that's [§] 3161(h)(1)(d) . . . .

> Delay resulting from any pretrial motion from the filing of the motion through
> conclusion of a hearing on or the disposition of such motion [is tolled].  So up until
> the time this Court resolves that issue in some way according to the Speedy Trial
> Act that alone is tolling the time.

Dec. 13 Tr. at 15:4-16:13 (Castellano).  The Court asked whether Martinez' calculation is correct, that "if the Speedy Trial Act is not reset by the indictment, then it runs on Christmas day?"  Dec. 13 Tr. at 16:14-172 (Court).  The United States answered: "Approximately Christmas day if they are correct and I don't know we haven't had a chance to research this." Dec. 13 Tr. at 17:3-7 (Castellano).

The Court stated that it is "very reluctant to try these two counts separately."  Dec. 13 Tr. at 17:25-18:1 (Court).  The Court also stated that it was not certain whether United States v. Ray, 899 F.3d 864, had "changed the landscape [so] that the superseding indictment has not reset the clock on the felon-in-possession charge[]," and that United States v. Ray might not have "meant to eliminate the three factor test.  And I think the three-factor test in a quick analysis seems to lean toward the Defendant on this one."  Dec. 13 Tr. at 18:3-13 (Court).  The United States stated that

> even if [the two charges] are running on different timelines, we haven't run the
> timeline on either count, and I think the ends of justice continuance tolls that time.
> . . . [E]ven if . . . the felon-in-possession charge has its own timeline, and ends
> earlier [than the racketeering conspiracy,] . . . the ends of justice tolls that time.

Dec. 13 Tr. at 19:3-9 (Castellano).

In response, as to the Speedy Trial Act issue, Martinez stated that "if the Court does not sever," Martinez would

> have no choice but to continue on the RICO charge.  A continuance as to the felon-
> in-possession charge would certainly be over the defendant's objection.  [Martinez]
> made that clear on the record yesterday that he wants to go to trial on his felon-in-
> possession charge. . . .   I disagree that there would be any ends of justice
> continuance as to the felon-in-possession possession charge because of some type
> of consent from the defense.

Dec. 13 Tr. at 22:9-20 (Hart).  Turning back to the Motion's argument about unfair prejudice of

any evidence related to gang affiliation or membership, Martinez argued that

> on well settled Tenth Circuit law[,] . . . evidence of gang affiliation or membership
> is only relevant to prove identity, joint venture, and existence of a conspiracy.  As
> to the felon-in-possession charge, none of those three categories of issues are
> present.  There is not some issue where we need to determine whether Mr. Martinez
> is actually the defendant[], . . . whether there were multiple people alleged [to be
> involved], [or] whether Mr. Martinez has asserted that someone else had a gun.  . . .
> It's a felon-in-possession charge rather than a conspiracy charge or a drug
> trafficking charge. There is no issue in the felon-in-possession count [on a] joint
> venture or the existence of a conspiracy.  While the Tenth Circuit recognizes that
> to evidence may eventually come in for impeachment purposes, the burden is on
> the Government to lay that foundation in trial and what the Tenth Circuit says is
> that impeachment is made for credibility when the witness and the defendant are
> alleged to be members of the same gang.  There is nothing in the discovery Your
> Honor that alleged that the alleged victim or any of the witnesses share the same
> gang membership in this case.

Dec. 13 Tr. at 25:3-26:5 (Hart).  The Court asked whether there are any cases where a court had

severed offenses where evidence was relevant to one offense, but not others, and where a limiting

instruction was not sufficient.  See Dec. 13 Tr. at 26:7-21 (Court).  Martinez responded, stating

that he had read nearly 200 felon-in-possession cases where evidence of gang affiliation is

admitted, but he could not find any cases with multiple charges.  See Dec. 13 Tr. at 26:21-27:1

(Hart).  Martinez argued that, under rule 403 of the Federal Rules of Evidence and Old Chief v.

United States, 519 U.S. 172 (1997), it is

> prejudicial, as to the felon-in-possession charge, to put someone through a RICO
> trial where the Government has to put on evidence asserting that he's part of a
> criminal organization that engages . . . in murder for hire and armed robbery and all
> types of violent crimes, and then even with a limiting instruction [it is unrealistic
> to] expect the jury to say well I'm not going to consider anything about the weeks
> of evidence that were put on of how violent this alleged criminal activity is.

Dec. 13 Tr. at 27:1-16 (Hart).  The Court stated that it agreed with Martinez that, if there was only

the felon-in-possession charge,

> I'd be hard pressed to let in gang affiliation, I mean maybe the Government could
> make an argument that would convince me, but I guess I would probably lean over
> backwards to keep it out.  So I'm with you on that.  But once somebody gets charged
> with multiple crimes, I'm not seeing that the Tenth Circuit or the Supreme Court

- 21 -

says you can't try those together.

Dec. 13 Tr. at 28:14-29:8 (Court).  Martinez stated that "I agree Your Honor there is no case that

says that a felon-in-possession [charge] can never be charged or tried with" another charge.  Dec.

13 Tr. at 29:9-12 (Hart).  The Court stated that, in, for example, a drug case, if the jury is told that

the defendant has a gun, "the jury is going to look a lot differently at that" defendant, because they

will make assumptions as to why the defendant had a gun, but those charges do not get severed.

Dec. 13 Tr. at 30:1-10 (Court).  Martinez stated that his

> disagreement is that the prejudice of saying "I know why he may have a gun" in a
> drug case is significantly different than the prejudice that would be created in a
> RICO case where the Government has the affirmative obligation to put on evidence
> that Mr. Martinez is alleged to be part of a criminal organization that's alleged to
> carry out violent murder, violent crimes. . . . [For the drug case,] the Government
> would get to argue those together, because they'd get to say to the jury well of
> course the gun was his because he was out dealing drugs. . . . [T]here are a lot of
> cases that deal with those issues those type of identity issues.  That's not what we
> have here.  We have the Government intending to put on evidence of unrelated to
> the felon-in-possession charge unrelated allegation of violent crimes including as
> they stated yesterday possibly VICAR[5] murder charges to then say that any
> reasonable juror, even with a limiting instruction, is going to sit there and be able
> to separate out three weeks of evidence saying that Mr. Martinez is alleged to be
> part of this horribly violent criminal organization when it comes to whether or not
> he possessed a gun. I think it's a very different scenario.  I think that's the type the
> exact type of scenario that <u>Old Chief</u> tries to protect., because when we're you can't
> these two together, that evidence could only be used in his case to say he's a bad
> man, so convict him.

Dec. 13 Tr. at 30:11-31:22 (Hart).

The United States responded that "[t]here is a conspiracy charge in this case and the

evidence of Mr. Martinez' possession of a gun is relevant to that conspiracy.  And as a matter of

fact, it's charged as part of overt acts of conspiracy."  Dec. 13 Tr. at 33:2-8 (Castellano).  The

---

[5]A Violent Crimes in Aid of Racketeering Act, 18 U.S.C. § 1959 ("VICAR") violation
requires an underlying state-law offense, i.e., someone "murders, kidnaps, maims, assaults with a
dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit
a crime of violence against any individual in violation of the laws of any State or the United States,
or attempts or conspires so to do."  18 U.S.C. § 1959(a).

United States stated that it would prove that Martinez is an SNM Gang member at trial.  See Dec.

13 Tr. at 33:9-35:7 (Court, Castellano).  The United States argued that

> the facts of the felon-in-possession charge, . . . leads to the overt facts in the First
> Superseding Indictment.  So this  evidence overlaps greatly with the conspiracy
> charged in this case, so they are closely tied, Your Honor.  It's not just a straight
> felon-in-possession charge.  It would have been at the state level, but it's not here.
> It is a part of the overt acts in the Indictment.

Dec. 13 Tr. at 26:14-22 (Castellano).  The United States contended that the United States Court of

Appeals for Sixth Circuit case that Martinez cites in his Motion, United States v. Peete, 781 Fed.

App'x 427, 438-40 (6th Cir. Jul. 15, 2019), supports the United States' position, because

> as the Court knows from the evidence in the previous trials, . . . SNM Gang
> [members] are expected to carry firearms at regular intervals, so that's an
> expectation [that] explains why [Martinez] was there, and it also explains the
> relationships in terms of [why he] was there reminding other people at the house
> that they're gang members, because that basically means there are consequences.
> So this ties in quite well with the conspiracy . . . . [T]he overt acts in this Indictment
> and the felon-in-possession charge show why he agreed with other SNM Gang to
> violate RICO statute.

Dec. 13 Tr. at 37:1-38:5 (Castellano).

Then the Court asked the United States why it should admit "evidence that's highly

relevant to one charge but would be highly prejudicial on the felon-in-possession charge."  Dec.

13 Tr. at 38:23-25 (Court).  The United States argued that one of the cases that Martinez cites in

his brief, see United States v. Aranda-Diaz, 31 F. Supp. 3d 1285, 1296-97 (D.N.M.

2014)(Browning, J.), is analogous to the situation here, because the case explains that a defendant's

gang membership is relevant in drug trafficking cases, because a defendant's gang membership

makes it more probable that the defendant is involved in drug trafficking activities.  See Dec. 13

Tr. at 39:4-12 (Castellano).  The United States argued that gang membership provides a motive

why someone commits a crime.  See Dec. 13 Tr. at 39:17-25 (Castellano).

The Court stated:

I'm not prepared today to grant a motion to sever. I'll take the motion and look at it, but I'm not inclined to grant it. [As to the] Speedy Trial Act problem . . . I've got some concerns, but [the United States] do[es] have a Tenth Circuit case that . . . seems to support what they're doing as far as resetting the clock. But . . . as a district judge, I'm a little concerned about ignoring the cases they're relying on which then have this three-factor test, and I've already indicated I think the factors may [not] favor the Government . . . . So I'm kind of forewarning the Government that I may take a hard look at a motion to dismiss for Speedy Trial Act problems if we proceed. But I am not inclined to separate it just because there may be Speedy Trial Act problems on one of the counts.

As far as the <u>Old Chief</u> issue, . . . I still just don't think that's probably the law. . . . I still think if you're going to try these counts together -- and I don't think there is anything that says you can't try them together -- that you can have evidence that's relevant to one charge that's not relevant to another. And I'm not sure <u>Old Chief</u> takes that ability away. So at least at the moment it's probably subject to a motion in limine down the road. It would gut the Government's case. I might have to set it aside if I decide that the Defendant is right on this <u>Old Chief</u> issue. But again, I think that's either . . . a motion to set aside the conviction on the gun count or a motion in limine, rather than . . . a reason to sever. . . . [I]n the RICO case which is pled now, they can certainly prove everything they want about the gun. And then if I was to have a separate case, I'd hear the same evidence. I think it's really hard for the Defendant to make an argument that that's a good way to try these two counts.

So at least at the moment I'm not inclined to grant the motion. I'll probably work on it some more, but I'm not inclined to grant it.

Dec. 13 Tr. at 41:3-43:9 (Court).

After the Court indicated that it was "not prepared today to grant a motion to sever," the Court asked the parties what it should do with the United States' Motion to Continue Trial. <u>See</u> Dec. 13. Tr. at 41:3-6 (Court); <u>id.</u> at 43:10-12 (Court). The United States stated that Martinez had represented that he would consent to the continuance if the Court denied the Motion. <u>See</u> Dec. 13. Tr. at 43:13-16 (Castellano). The United States requested a 30-day continuance "given the [90,000 pages of] discovery that will be disclosed to the defendants." Dec. 13. Tr. at 44:14-25 (Castellano). Martinez stated that up until the pretrial conference, his "first preference is to try a severed felon-in-possession case next week. . . . [His] second preferred position was to just go ahead and try a joined felon-in-possession/RICO case, and then [his] third position was to continue the entire

trial." Dec. 13. Tr. at 45:9-21 (Harrison).  Martinez clarified that after the pretrial conference the

day before -- December 12, 2019 -- he had contacted the United States "conceding that [he would]

switch [to] the second" option, and "[i]f we have to try the joined trial, we need a continuance."

Dec. 13. Tr. at 45:22-25 (Harrison).  Martinez stated that "for a RICO case, a 30-day continuance

made sense . . . for us to get the discovery."  Dec. 13. Tr. at 46:11-15 (Harrison).  Counsel for

Martinez engaged in the following discussion with the Court:

| | |
|---|---|
| [Harrison:] | [I] just wanted to make it clear so that we're not waiving anything on our severance issue.  I'm not trying to be difficult.   We don't think we need any additional time on the felon-in-possession.  We don't consent to a continuance of the felon-in-possession trial.  However, if we're forced to have a joint trial, yes, Your Honor, we think 30 days is inappropriate. |
| The Court: | And will you represent to the Court here orally that that's the minimum time you need to prepare for trial? |
| Harrison: | Yes, Your Honor. |
| The Court: | All right. With that representation, I'll sign the order and give a 30-day continuance. |
| . . . | |
| The Court: | All right. So I'm going to write on [the Order to Continue Trial that] . . . "The defendant has represented that if this case is going to be a trial of both counts, 30 days is the minimum time it will take for him to be prepared for trial."  Is that fair as it's stated?  Do you want me to read it again?  "The defendant has represented that if this case is going to be a trial of both counts, 30 days is the minimum time it will take for him to be prepared for trial." |
| Harrison: | I think that's fair, Your Honor. |
| The Court: | All right.  So the trial is now set for [January 15, 2020, 30 days from December 16, 2019]. |

Dec. 13. Tr. at 47:2-48:20 (Harrison, Court).

6.      __The First Order to Continue Trial__.

On December 13, 2019, during the pretrial conference, the Court granted the United States'

Motion to Continue Trail.    See Order to Continue Trial at 1, filed December 13, 2019 (Doc.

40)("First Order to Continue Trial").  The Order to Continue Trial rescheduled one, joint trial on

both counts for January 15, 2020.  See First Order to Continue Trial at 1.  The Court concluded

that

> the ends of justice will be served by granting this extension in which to file motions
> and a continuance of the trial.  Additional time will allow the Defendant to further
> conduct an investigation into the charges in this case, to prepare and file pretrial
> motions, and to adequately prepare for trial.  This motion is not predicated upon the
> congestion of the Court's docket.
>
> . . . .
>
> After weighing the best interests of the public and of the Defendant with the
> ends of justice, the Court finds that granting a continuance will strike a proper
> balance between the ends of justice and the best interest of the public and of the
> Defendant for the reasons stated in the motion requesting a continuance, filed
> December 12, 2019 (Doc. 25).  Specifically, continuing disclosure of discovery,
> outweighs the Defendant's and the public's interest in a speedy trail.  See 18 U.S.C.
> § 3161(h)(7). . . .  The 30 day continuance is sufficient, without being greater than
> necessary, for the Defendant to complete the tasks set forth in the motion to
> continue.

First Order to Continue Trial at 1-2 (citations to case law omitted).  At the bottom of the Order to

Continue Trial, the Court wrote: "The Defendant has represented that, if the case is going to be a

trial on both counts, 30-days is the minimum that it will take for him to prepare for trail."  First

Order to Continue Trial at 2 (signed and dated December 13, 2019).

7.      __The Second Superseding Indictment__.

On January 9, 2020, the United States filed the Second Superseding Indictment, charging

Martinez with an additional two counts, for a total of four counts: (i) 18 U.S.C. § 1959(a)(1):

Violent Crimes in Aid of Racketeering (Murder) and 18 U.S.C. § 2: Aiding and Abetting; (ii) 18

U.S.C. § 1962(d): Racketeering Conspiracy; (iii) 18 U.S.C. § 1512: Witness Tampering; and (iv)

18 U.S.C. §§ 922(g)(1) and 924: Felon-in-possession of a Firearm and Ammunition.  See Second Superseding Indictment at 1.  Compare First Superseding Indictment at 1, with Second Superseding Indictment at 1 (retaining counts for racketeering conspiracy and felon-in-possession).

8.    **The Second Motion to Continue Trial.**

On January 10, 2020, the United States again moved to continue the trial, which was set for January 15, 2020, because a Grand Jury had returned the Second Superseding Indictment the day before, and the United States was in the process of disclosing over 600 pages of "discovery on the violent crimes in aid of racketeering (murder) charge to defense counsel," as well as a "series of the defendant's jail calls and additional discovery pertaining to the felon-in-possession charge."   Second Motion to Continue Trial ¶ 5, at 1, filed January 10, 2020 (Doc. 59).  The United States argued that (i) additional time will not prejudice Martinez; (ii) the parties need additional time to submit a motion to declare the case complex; (iii) "the second superseding indictment makes the defendant death penalty eligible.[6]  The parties need additional time to submit the materials necessary for the United States Attorney General to make a decision whether the United States will seek a sentence of death or not"; and (iv) learned counsel has yet to be appointed.  Second Motion to Continue Trial ¶¶ 6-8, at 2.  The United States requested a continuance of no less than ninety days because "the ends of justice will be served by granting this

---

[6]Martinez was death penalty eligible, because the Second Superseding Indictment added a count, Count 1, alleging Violent Crimes in Aid of Racketeering (Murder) in violation of 18 U.S.C. § 1959 and aiding and abetting in violation of 18 U.S.C. § 2, which has a maximum penalty of "death or life imprisonment."  18 U.S.C. § 1959(a)(1).  See Second Superseding Indictment at 1, 7-8.  On January 13, 2020, the Court ordered that "James A. Swetz shall be appointed as Learned Counsel to the Defendant nunc pro tunc as of January 9, 2020."  Minute Order, filed January 13, 2020 (Doc. 68)(text only entry).  See 18 U.S.C. § 3005 (allowing the appointment of learned counsel).

extension of time in which to file motions and a continuance of the trial.  A continuance will also

provide more time for trial preparation and drafting and filing of pretrial motions and motions *in

limine*."  Second Motion to Continue Trial ¶¶ 9-10, at 2 (citing United States v. Hernandez-Mejia,

406 Fed. App'x 330, 338 (10th Cir. 2011)).

The United Sates asserts that the "Defense counsel for the Defendant does not oppose this

motion," noting, in a footnote:

> The Defendant clarifies that he consents to a continuance of the VICAR,
> RICO conspiracy, and witness tampering charges.  The Defendant continues to
> maintain his position that the felon-in-possession charge should be severed, so he
> does not consent to a continuance on that count.  This objection is made to continue
> to preserve this issue by the Defendant.  Finally, the Defendant does not consent to
> a continuance of the Jencks disclosure deadline.

Second Motion to Continue Trial ¶ 12, at 3.  On January 14, 2020, the Court granted the unopposed

Second Motion to Continue Trial's request for a ninety-day continuance.  See Order to Continue

Trail at 1, 3, filed January 14, 2020 (Doc. 69)("Second Order to Continue Trial").

**9.      The Order to Declare the Case Complex.**

On February 2, 2020, the United States and Martinez filed the Joint Motion to Declare the

Case Complex, filed February 2, 2020 (Doc. 73).  The parties note that (i) a Grand Jury recently

had returned the Second Superseding Indictment; (ii) the United States anticipates disclosing the

discovery from all the related SNM cases, which "consists of approximately 105,401 pages,

seventy-four DVDs, three flash drives and one TB external hard drive"; and (iii) one charge in the

Second Superseding Indictment is death penalty eligible.  Joint Motion to Declare the Case

Complex at 1-2.  The parties request that the Court vacate the standard scheduling order and

declare the case complex under 18 U.S.C. § 3161(h)(7)(B)(ii), because "this case is so complex

that it is unreasonable to expect the defendant to adequately prepare for trial within the 70-day

time limit established by 18 U.S.C. § 3161(c)(1)."  Joint Motion to Declare the Case Complex at

2.

On February 12, 2020, the Court granted the parties' Joint Motion to Declare the Case Complex under 18 U.S.C. § 3161(h)(7)(B)(ii).  See Order Declaring the Case Complex at 1, filed February 12, 2020 (Doc. 75).  The Court further ordered, under 18 U.S.C. § 3161(h)(7)(A), that

> all of the time from the filing of the Motion to Declare the Case Complex until the beginning of the jury trial in this matter shall be excluded for the purposes of the Speedy Trial Act, and the ends of justice in granting the requested continuance outweigh the best interest of the public and the defendant in a speedy trial.

Order Declaring the Case Complex at 2.

## LAW REGARDING VICAR AND RICO

The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961-68 ("RICO"), prohibits specific activities when they are committed in connection with a pattern of racketeering activity.  E.g., 18 U.S.C. § 1962(b)("It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.").  RICO defines a "pattern of racketeering activity" such that it "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."  18 U.S.C. § 1961(5). Racketeering activity includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance" that is a state-law felony, 18 U.S.C. § 1961(1)(A), and "any act which is indictable under any" one of myriad federal statutes, § 1961(1)(B)-(G).

A Violent Crimes in Aid of Racketeering Act, 18 U.S.C. § 1959 ("VICAR") violation requires an underlying state-law offense, i.e., someone "murders, kidnaps, maims, assaults with a

dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do."  18 U.S.C. § 1959(a).  Committing and conspiring to commit assault with intent to inflict serious bodily injury do not violate VICAR.  See United States v. DeLeon, 318 F. Supp. 3d 1272, 1275 (D.N.M. 2018)(Browning, J.)(citing 18 U.S.C. § 1959(a)). The underlying state law offense becomes a federal VICAR violation only when it is committed: (i) "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity"; or (ii) "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity."  18 U.S.C. § 1959(a).  VICAR employs RICO's definition of racketeering activity. See 18 U.S.C. § 1961(1)(defining racketeering activity for RICO purposes); 18 U.S.C. § 1959(b)(1)(stating that, under VICAR, racketeering activity "has the meaning set forth in section 1961 of this title"). See also United States v. DeLeon, No. CR 15-4268 JB, 2018 WL 2323236, at *2 (D.N.M. May 22, 2018)(Browning, J.)(citing United States v. Licavoli, 725 F.2d 1040, 1046-47 (6th Cir. 1984); United States v. Davis, 576 F.2d 1065, 1066-67 (3d Cir. 1978); United States v. Brown, 555 F.2d 407, 418 n.22 (5th Cir. 1977)).

VICAR employs RICO's definition of racketeering activity.  See 18 U.S.C. § 1961(1) (defining racketeering activity for RICO purposes); 18 U.S.C. § 1959(b)(1) (stating that, under VICAR, racketeering activity "has the meaning set forth in section 1961 of this title").  To succeed on a VICAR charge, the United States must show that the enterprise and not the individual defendant committed a pattern of racketeering activity.  See United States v. DeLeon, No. CR 15-4268 JB, 2017 WL 3054511, at *106 (D.N.M. June 30, 2017)(Browning, J.).  Moreover, the evidence must establish "that the enterprise's members, acting for the enterprise, engage in

racketeering activity," but not "that the members have knowledge that each member will advance the activity or have an agreement to commit the activity."  United States v. Baca, No. CR 16-1613 JB, 2019 WL 399919, at *1 (D.N.M. Jan. 31, 2019)(Browning, J.)(citing 18 U.S.C. § 1959).  The United States must demonstrate that, at the time of the charged offense, the enterprise "was . . . engaging in racketeering activity in a systematic way."  United States v. Baca, 323 F. Supp. 3d 1292, 1298 (D.N.M. 2018)(Browning, J.)("[T]he United States must show that the SNM was in the racketeering business on or about [a certain date], but it does not need to show that the SNM engaged in a racketeering act on or about that date.").  "The best way -- and, perhaps, the only way -- to prove that [an enterprise] was engaged in racketeering activity when the conduct charged . . . occurred . . . is to introduce evidence of roughly contemporaneous instances of racketeering activity in which the [enterprise] engaged."  United States v. DeLeon, 323 F.R.D. 672, 691 (D.N.M. 2017)(Browning, J.).

RICO states that an enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(1).  VICAR employs a slightly narrower definition of the term "enterprise," such that it "includes any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. § 1959(b)(2).  "An association-in-fact requires: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit those associated with the enterprise to pursue the enterprise's purpose."  United States v. Kamahele, 748 F.3d 984, 1003 (10th Cir. 2014).  See Boyle v. United States, 556 U.S. 938, 948 (2009)("[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose."); id. ("While the

group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence.").

The Court has addressed other issues related to VICAR.  See, e.g., United States v. Baca, No. CR 16-1613 JB, 2019 WL 4596661, at *50 (D.N.M. Apr. 26, 2019)(Browning, J.)(stating that "performing an act integral to the enterprise even without the enterprise's expressly ordering the act pursuant to a promise of an item of pecuniary value satisfies the first motive option"); United States v. DeLeon, No. CR 15-4268 JB, 2018 WL 4100949, at *1-6 (D.N.M. Aug. 28, 2018)(Browning, J.)(determining that an as-applied challenge to VICAR's constitutionality is a "contradiction in terms" but permitting the defendant to bring in the future a facial challenge to the statute); United States v. DeLeon, No. CR 15-4268 JB, 2018 WL 4279442, at *2 (D.N.M. April 18, 2018)(Browning, J.)("The Court does not believe that enterprise evidence is subject to rule 404(b)(2)'s notice requirement in a criminal case.").  The Court has also concluded:

> That conspiring to commit murder "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity" violates VICAR is immaterial for rule 802(d)(2)(E) purposes.  18 U.S.C. § 1959.  The inquiry under rule 801(d)(2)(E) is whether a statement was made during and in furtherance of a conspiracy, but a VICAR violation is not, itself, a conspiracy even though it may have a conspiracy as its underlying offense.

United States v. DeLeon, 287 F. Supp. 3d 1187, 1255 (D.N.M. 2018)(Browning, J.).

## LAW REGARDING THE SPEEDY TRIAL ACT

"The dual purpose of the Speedy Trial Act is to protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings."  United States v. Saltzman, 984 F.2d 1087, 1090 (10th Cir. 1993)(quoting United States v. Noone, 913 F.2d 20, 28 (1st Cir. 1990)).  The Speedy Trial Act, 18 U.S.C. § 3161(c)(1), reads in relevant part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.  If a defendant consents in writing to be tried before a magistrate judge on a complaint, the trial shall commence within seventy days from the date of such consent.

18 U.S.C. § 3161(c)(1).

The Speedy Trial Act requires "that an accused person's trial must begin within seventy days of his indictment or initial appearance, whichever is later."  United States v. Cano-Silva, 402 F.3d 1031, 1034 (10th Cir. 2006)(citing 18 U.S.C. § 3161(c)(1)).  The Speedy Trial Act provides that certain periods of delay are not included in computing the time limits for trial.  18 U.S.C. § 3161 states in relevant part:

> **(h)** The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> **(1)** Any period of delay resulting from other proceedings concerning the defendant, including but not limited to--
>
> **(A)** delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;
>
> . . . .
>
> **(F)** delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
>
> . . . .
>
> **(J)** delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

. . . .

**(4)**     Any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial.

. . . .

**(7)**

    **(A)**     Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.  No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161.  Courts are instructed to consider specific factors when determining whether to grant a continuance under section (A) of 18 U.S.C. § 3161(h)(7).  See 18 U.S.C. § 3161(h)(7)(B).  Section 3161(h)(7)(B) sets forth the factors a court should consider:

    **(B)**     The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:

        **(i)**     Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

        **(ii)**     Whether the case is so unusual or so complex, due to the

number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

**(iii)**   Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

**(iv)**   Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B).

The Supreme Court of the United States of America in United States v. Zedner, 547 U.S. 489 (2006), held that, when a district court makes no findings on the record to support a § 3161(h)(8) continuance -- now § 3161(h)(7) -- harmless-error review is not appropriate. See 547 U.S. at 506-07. In United States v. Williams, 511 F.3d 1044 (10th Cir. 2007), the Tenth Circuit held that "the Act does not allow a district court to retroactively grant an ends-of-justice continuance. 'Congress intended that the decision to grant an ends-of-justice continuance be prospective, not retroactive; an order granting a continuance on that ground must be made at the outset of the excludable period.'" 511 F.3d at 1055 (quoting United States v. Doran, 882 F.2d 1511, 1516 (10th Cir. 1989)). In granting an ends-of-justice continuance, a district court must make explicit finds showing why the continuance is necessary. See United States v. Hernandez-

Mejia, 406 Fed. App'x 330, 336 (10th Cir. 2011)(unpublished).[7]  The Tenth Circuit explained:

> This court has interpreted strictly the requirements of § 3161(h)(7)(A) and (B).  We have held (1) that to satisfy the requirements of § 3161(h)(7)(A), the district court must make explicit oral or written on-the-record findings explaining the reasons why a trial continuance is necessary, unless the facts supporting the continuance "are obvious and set forth in the motion for the continuance itself," United States v. Occhipinti, 998 F.2d 791, 797 (10th Cir. 1993)(internal quotation marks omitted); (2) that "the record must clearly establish [that] the district court considered the proper factors at the time such a continuance was granted," [United States v.] Toombs, 574 F.3d [1262,] 1269 [10th Cir. 2009]; (3) that "it must be clear from the record that the trial court struck the proper balance when it granted the continuance," United States v. Williams, 511 F.3d 1044, 1056 (10th Cir. 2007)(alteration and internal quotation marks omitted); and (4) that although adequate trial-preparation time is a permissible reason for granting a continuance and tolling the Act, "such a reason must be supported by the information and evidence presented to the district court," United States v. Gonzales, 137 F.3d 1431, 1435 (10th Cir. 1998).

United States v. Hernandez-Mejia, 406 F. App'x at 336.

Section 3162(a)(1) and (2) of the Act sets out the sanctions applicable when the United States has not filed an indictment or information, or when the defendant is not brought to trial within the time limits that § 3161(b) and (c) require:

**(a)**

---

[7]United States v. Hernandez-Mejia is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that United States v. Hernandez-Mejia, and the other cases cited herein, United States v. Tsosie, 288 F. App'x 496, 499 (10th Cir. 2008); United States v. Peete, 781 F. App'x 427, 438-39 (6th Cir. 2019), have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

**(1)** If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.  In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

**(2)** If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant.  The defendant shall have the burden of proof of supporting such motion but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3).  In determining whether to dismiss the case with  or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the   administration of this chapter and on the administration of justice.  Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.

18 U.S.C. § 3162(a)(1), (2).

In <u>United States v. Cano-Silva</u>, the Tenth Circuit stated: "The fact that a violation has taken place is not alone sufficient for the application of the more severe sanction of dismissal with prejudice, which should be reserved for more egregious violations.  Dismissal with prejudice is a strong message indeed, and one ill-suited to an isolated and inadvertent violation."  402 F.3d at 1035.

While dismissal of the indictment is mandatory, the district court retains discretion

to determine whether the indictment is dismissed with or without prejudice. In determining whether to dismiss with or without prejudice, the court "shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."

United States v. Cano-Silva, 402 F.3d at 1034 (quoting 18 U.S.C. § 3162(a)(2))(citations omitted). The offense's seriousness must be weighed against the delay's severity. See United States v. Jones, 213 F.3d 1253, 1257 (10th Cir. 2000). In addition, the Supreme Court has suggested that the trial court should also consider, when determining whether to dismiss an indictment with prejudice, the prejudice to the defendant that a Speedy Trial violation delay has caused. See United States v. Taylor, 487 U.S. 326, 333-34 (1988).

"It is self-evident that dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays." United States v. Taylor, 487 U.S. at 342. "Preindictment delay that rises to a constitutional violation requires dismissal of the indictment with prejudice to retrial." United States v. Johnson, 120 F.3d 1107, 1110 n.2 (10th Cir. 1997)(citing United States v. Marion, 404 U.S. 307, 324 (1971)). "Where the delay is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy." United States v. Saltzman, 984 F.2d at 1093. See United States v. Johnson, 120 F.3d at 1112 ("Ms. Johnson bears no responsibility for the circumstances leading to the Speedy Trial Act violation, and . . . she properly asserted her rights under the Act."). In United States v. Johnson, one aspect of the Speedy Trial Act violations that troubled the Tenth Circuit was that, although the nature of the offense was relatively uncomplicated, the government delayed almost two years in indicting her. See 120 F.3d at 1112.

In United States v. Perez-Alcatan, 376 F. Supp. 2d 1253 (D.N.M. 2005)(Browning, J.), the

Court dismissed Perez-Alcatan's indictment without prejudice, because the United States, through inadvertent error, failed to indict him within thirty days of the arrest, as the Speedy Trial Act requires.  See 376 F. Supp. 2d at 1257.  Thirty days from Perez-Alcatan's arrest was May 26, 2005, and a grand jury indicted Perez-Alcatan on June 14, 2005.  See 376 F. Supp. 2d at 1254.  Perez-Alcatan argued that the Court should dismiss his case with prejudice.  See 376 F. Supp. 2d at 1256.  He contended that his charged crime, re-entry into the United States after conviction for an aggravated felony, which carried a 16-level enhancement under the United States Sentencing Guidelines, was not a serious crime.  See 376 F. Supp. 2d at 1257.  His underlying aggravated felony, however, was voluntary manslaughter.  See 376 F. Supp. 2d at 1254.  The Court looked to the Sentencing Guidelines, stating that a 16-level enhancement is among the largest in the Sentencing Guidelines, which signals Congress' intent to consider the crime a serious one.  See 376 F. Supp. 2d at 1256.  Furthermore, the Court stated that the Guideline's lack of authorization for probation in such circumstances, and that Congress is hiring more border agents and Assistant United States Attorneys to slow the flow of immigration and punish those who are already felons, indicates the crime's seriousness.  See 376 F. Supp. 2d at 1256.  The Court concluded that the seriousness of the offense favored dismissal without prejudice.  See 376 F. Supp. 2d at 1256.  The Court also held that the facts and circumstances that led to the delay did not favor dismissal with prejudice.  See 376 F. Supp. 2d at 1256-57.

While most immigration cases in which a defendant waives a preliminary hearing and detention hearing also involve a waiver of presentment to the grand jury, Perez-Alcatan chose to waive the detention hearing and the preliminary hearing, but not presentment to the grand jury. See 376 F. Supp. 2d at 1256.  As a result of the unique situation, the file cover in the United States Attorney's Office was annotated "waiver" and was incorrectly filed, causing untimely

presentment.  376 F. Supp. 2d at 1257.  The Court further held that, because the delay-producing conduct was an administrative oversight, and was without bad faith, dismissing the case with prejudice would do little to prevent such future mistakes.  See 376 F. Supp. 2d at 1257.  The Court stated that the "United States continues to present its cases for indictment in a timely manner; dismissal with prejudice would not improve the professional efforts already in place in adhering to the Speedy Trial Act."  376 F. Supp. 2d at 1257.  The Court also stated that Perez-Alcatan had not alleged any actual prejudice in his ability to defend himself.  See 376 F. Supp. 2d at 1257.  The Court, therefore, dismissed the case without prejudice.  See 376 F. Supp. 2d at 1257.

## LAW REGARDING RULE 8 JOINDER

Rule 8 of the Federal Rules of Criminal Procedure is the vehicle for joinder of both of offenses and of defendants in a criminal proceeding.  Rule 8 provides:

> (a)    Joinder of Offenses.  The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged --whether felonies or misdemeanors or both -- are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
>
> (b)    Joinder of Defendants.  The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.   All defendants need not be charged in each count.

Fed. R. Crim. P. 8.  In the Tenth Circuit, rule 8(b) governs the propriety of joinder of multiple defendants and their alleged offenses into one indictment.  See United States v. Eagleton, 417 F.2d 11, 14 (10th Cir. 1969)("Rule 8(a) . . . does not apply in cases where more than one defendant is joined in the same indictment.  Such joinder [of offenses] is governed by Rule 8(b).").  See also United States v. Mann, 701 F.3d 274, 289 (8th Cir. 2012)("Where an indictment joins defendants as well as offenses, the propriety of the joinder of offenses is governed by Rule 8(b), rather than Rule 8(a).");  United States v. Walker, 657 F.3d 160, 169 (3d Cir. 2011)("Rule 8(a) applies only to

prosecutions involving a single defendant, and[,] in a multi-defendant case such as this, the tests for joinder of counts and defendants is merged in Rule 8(b)."). "Joint trials of defendants who are indicted together are preferred because 'they promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" United States v. Hall, 473 F.3d 1295, 1301-02 (10th Cir. 2007)(quoting Zafiro v. United States, 506 U.S. 534, 537 (1993)).

Under rule 8(b), then, multiple defendants may be tried jointly "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Rule 8(b), along with its phrase "same series of acts or transactions," Fed. R. Crim. P. 8(b), "is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system," United States v. Hopkinson, 631 F.2d 665, 668 (10th Cir. 1980). In light of rule 8(b)'s broad construction, courts conclude that a conspiracy count -- albeit not necessary -- is sufficient to warrant joinder of all defendants charged in that conspiracy, regardless whether each defendant is charged in each count or with each substantive act. See, e.g., United States v. Hill, 786 F.3d at 1272.

> Although the Indictment in this case charged six different robberies alleged to have been committed by different defendants over a more than two-year period, it also alleged that the defendants conspired and agreed with each other to commit all six of the robberies. Given the broad construction we afford Rule 8 and our preference for liberal joinder, this was sufficient to permit joinder.

United States v. Hill, 786 F.3d at 1272.

## LAW REGARDING RULE 14(a) SEVERANCE

Pursuant to rule 14(a) of the Federal Rules of Criminal Procedure, a court may "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires" if joinder "appears to prejudice a defendant." Fed. R. Crim. P. 14(a). Rule 14(a) envisions situations where a joint trial would be inappropriate and harmful to the accused's constitutional rights even though joinder is proper under rule 8, which is liberally and broadly

applied in the interest of efficiency.  See Zafiro v. United States, 506 U.S. at 538 (using rule 14 as

the standard for a severance); United States v. Cox, 934 F.2d 1114, 1119 (10th Cir. 1991)(applying

rule 14 to set the standard for severance).  The decision to sever is "within the sound discretion of

the trial court."  United States v. Cox, 934 F.2d at 1119 (citing United States v. Valentine, 706

F.2d 282, 289-90 (10th Cir. 1983)).  See United States v. Gant, 487 F.2d 30, 34 (10th Cir.

1973)(noting that severance "is peculiarly within the discretion of the trial court")(citations

omitted).

      "Inasmuch as severance is a matter of discretion and not of right, the defendant must bear

a heavy burden of showing real prejudice to his case."  United States v. Hall, 473 F.3d at 1302

(quoting United States v. McConnell, 749 F.2d 1441, 1444 (10th Cir. 1984)).  "Joint trials of

defendants who are indicted together are preferred, because 'they promote efficiency and serve the

interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'"  United States

v. Hall, 473 F.3d at 1301-02 (quoting Zafiro v. United States, 506 U.S. at 537).  Additionally, "a

criminal defendant has no constitutional right to severance unless there is a strong showing of

prejudice caused by a joint trial."  Cummings v. Evans, 161 F.3d 610, 619 (10th Cir. 1998)(citing

United States v. Youngpeter, 986 F.2d 349, 353 (10th Cir. 1993)).  The prejudice standard

envisioned by rule 14 thus requires a showing of actual prejudice, and not merely a showing that

a defendant "may have a better chance of acquittal in separate trials."  United States v. Pursley,

474 F.3d 757, 766 (10th Cir. 2007).  To establish prejudice, a defendant must identify a "'specific

trial right' that was compromised or show the jury was 'prevented . . . from making a reliable

judgment about guilt or innocence.'"  United States v. Pursley, 474 F.3d at 766 (quoting Zafiro v.

United States, 506 U.S. at 539).  Significantly, "[r]ule 14 does not require severance even if

prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district

court's sound discretion." Zafiro v. United States, 506 U.S. at 538-39.

In interpreting rule 14, the United States Courts of Appeals for the Fifth, Sixth, Tenth, Eleventh, and District of Columbia Circuits have explored the risk of "mutually antagonistic" or "irreconcilable" defenses may supply the prejudice needed in some circumstances as to warrant severance. Zafiro v. United States, 506 U.S. at 538 (citing, e.g., United States v. Benton, 852 F.2d 1456, 1469 (6th Cir. 1988); United States v. Smith, 788 F.2d 663, 668 (10th Cir. 1986); United States v. Magdaniel-Mora, 746 F.2d 715, 718 (11th Cir. 1984); United States v. Berkowitz, 662 F.2d 1127, 1133-1134 (5th Cir. 1981); United States v. Haldeman, 559 F.2d 31, 71-72 (D.C. Cir. 1976)). The Tenth Circuit, in United States v. Pursley, provided that, in such a scenario, where a defendant seeks severance because of mutually antagonistic defenses as compared to co-defendants,

> a trial court engages in a three step inquiry. First, it must determine whether the defenses presented are "so antagonistic that they are mutually exclusive." United States v. Peveto, 881 F.2d 844, 857 (10th Cir. 1989). Second, because "[m]utually antagonistic defenses are not prejudicial per se," a defendant must further show "a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539. Third, if the first two factors are met, the trial court exercises its discretion and "weigh[s] the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." Peveto, 881 F.2d at 857.

United States v. Pursley, 474 F.3d at 765. In a court's consideration of such a scenario, "defenses are mutually antagonistic if 'the conflict between codefendants' defenses [is] such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other.'" United States v. Pursley, 474 F.3d at 765 (quoting United States v. Linn, 31 F.3d 987, 992 (10th Cir. 1994)). The Defendants must show that "'the acceptance of one party's defense would tend to preclude the acquittal of the other, or that the guilt of one defendant tends to establish the innocence of the other.'" United States v. Pursley, 474 F.3d at 765-66 (quoting United States v. Peveto, 881

F.2d at 857 (holding mutually exclusive defenses where one defendant said that he was preparing to be an informant and invited the other defendant, a purported drug dealer, to his house to gather information, while the other defendant said that he was innocently at the house and that the first defendant held the second defendant against his will)).

Ultimately, a trial court that denies a request for severance will be reversed only where a defendant demonstrates an abuse of discretion.  See United States v. Pursley, 474 F.3d at 765.  In exercising its discretion, however, the court should "weigh the prejudice resulting from a joint trial of co-defendants against the expense and inconvenience of separate trials."  United States v. Bailey, 952 F.2d 363, 365 (10th Cir. 1991)(quoting United States v. Cardall, 885 F.2d 665, 667-68 (10th Cir. 1989)).  "Neither a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' from the evidence that was overwhelming or more damaging against the co-defendant than that against the moving party is sufficient to warrant severance."  United States v. Bailey, 952 F.2d at 365 (citation omitted).  A defendant seeking severance bears the "heavy burden" of demonstrating a risk of prejudice from continued joinder.  United States v. Bailey, 952 F.2d at 365 n.4 (citing United States v. Jones, 707 F.2d 1169, 1171 (10th Cir. 1983); United States v. Petersen, 611 F.2d 1313, 1331 (10th Cir. 1979)). The Supreme Court has stated:

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant.  For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty.  When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.  Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice.  Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial.  The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here.  When the risk of prejudice is high,

> a district court is more likely to determine that separate trials are necessary, but, as we indicated in <u>Richardson v. Marsh</u>, [481 U.S. 200 (1987)] less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.

<u>Zafiro v. United States</u>, 506 U.S. at 539 (emphasis added)(citations omitted).

With respect to a district court's application of rule 14 in practice, particularly in the context of multi-count and multi-defendant Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), 18 U.S.C. § 1959 ("VICAR"), or conspiracy indictments, one district court has explained:

> Most often, severance of defendants will be required to protect the rights of defendants against undue prejudice resulting from joinder.  In other situations, severance may be required, or at least the argument for severance will be bolstered, by the physical limitations of the courthouse and the logistical difficulties of attempting to conduct a complex multi-defendant trial.

<u>United States v. Gray</u>, 173 F. Supp. 2d 1, 7-8 (D.D.C. 2001)(Lamberth, J.).  The United States District Court for the Eastern District of New York addressed the possibility of prejudicial joinder of the defendants

> deriving from the number of defendants and the number of counts, the complexity of the indictment, estimated length of the trial, disparities in the amount or type of proof offered against the defendants, disparities in the degrees of involvement by defendants in the overall scheme, possible conflict between various defense theories or trial strategies; and, especially, prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant.

<u>United States v. Gallo</u>, 668 F. Supp. 736, 749 (E.D.N.Y. 1987)(Weinstein, C.J.).  The <u>United States v. Gray</u> court explained that, in <u>United States v. Gallo</u>,

> [a]fter weighing the potential prejudice against defendants, the court decided that the dispositive factor counseling severance was judicial efficiency.  [<u>United States v. Gallo</u>, 668 F. Supp.] at 753 ("[T]he prejudices to the defendants are not clearly dispositive . . . , we might be reluctant to grant such severances on Rule 14 alone. . . . [W]e question the traditional assumption that denial of severance . . . promotes efficiency.").

<u>United States v. Gray</u>, 173 F. Supp. 2d at 8-9 (alterations in original).  Indeed, the <u>United States v.</u>

Gray court stated that "[m]any of the factors that counseled against complete joinder of defendants

[in United States v. Gallo] are also persuasive in the instant case," and so it concluded

> that despite the general presumption favoring joinder, some form of severance is necessary because of the physical limitations of the courtroom and hardship on the jurors, the defendants, and the Court.  Severance, however, should be of the most limited form necessary to satisfy those interests, because the Court finds that joinder of defendants, to the extent possible, will preserve judicial resources and permit the jury to have as complete a view of the evidence as possible.

United States v. Gray, 173 F. Supp. at 10.  Accordingly, the United States v. Gray court severed a

"158-count [Indictment]" charging "seventeen defendants" into two trial groupings based on

logistical concerns alone.  United States v. Gray, 173 F. Supp. at 1, 10.  The United States v. Gray

court also considered that

> [s]everal defendants have moved for complete severance or other joint trial configurations based on Rule 14 concerns of prejudice against defendants.  In order to prevail upon a claim for severance, [those] defendant[s] must show that joinder would violate that defendant's constitutional fair trial rights, or would "prevent the jury from making a reliable judgment about guilt or innocence."

United States v. Gray, 173 F. Supp. at 10 (quoting Zafiro v. United States, 506 U.S. at 539). Although

the United States v. Gray court had already severed the indictment in that case into two trial

groupings to alleviate the risk of prejudice to the defendants by logistical inefficiency and

impracticality, the court still was open to further requests for severance of individual defendants

upon a specific showing that joinder in either of the trial groupings still ran afoul of Zafiro v.

United States and of rule 14.  See United States v. Gray, 173 F. Supp. at 10.  The rule 14 inquiry

regarding the propriety of joinder is ongoing, and as the United States v. Gray court concluded in

severing that case's indictment into two trial groupings, its chosen "arrangement of the defendants

appears to be, at least on the information now available, the most efficacious in preserving judicial

resources, preventing duplicitous testimony and evidence, and reaching an expeditious resolution

for all defendants."  United States v. Gray, 173 F. Supp. at 18.

The Court has addressed severance of multiple offenses and defendants in United States v.
DeLeon, where the Court severed half of the sixteen counts involving nineteen defendants into
two trials, because it would enable the jury to make a more reliable judgment and was a more
"logical, efficient, and manageable way to try this case." United States v. DeLeon, No. CR 15-
4268 JB, 2017 WL 3054511, at *96-103 (D.N.M. June 30, 2017)(Browning, J.).  The Court
determined that rule 8 authorizes joinder of the sixteen offenses and the nineteen defendants,
because "the joined offenses are 'connected with or constitute parts of a common scheme or plan'
under rule 8(a)," United States v. DeLeon, 2017 WL 3054511, at *97 (citing Fed. R. Crim. P. 8(a)),
and because "the Defendants 'are alleged to have participated in the same act or transactions
constituting an offense or offenses,' namely violent crimes in aid of a racketeering enterprise,"
United States v. DeLeon, 2017 WL 3054511, at *97 (citing Fed. R. Crim. P. 8(b)). Although the
Court held that a Second Superseding Indictment did not misjoin the offenses or the defendants,
the Court decided to divide the case into two trials by severing the sixteen counts in half. See
United States v. DeLeon, 2017 WL 3054511, at *96.  The Court relied on rule 14 of the Federal
Rules of Criminal Procedure, which allows a court to sever if joinder "appears to prejudice a
defendant or the government," a "court may order separate trials of counts, sever the defendants'
trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).  The Court also
noted that, despite

> "the general presumption favoring joinder, some form of severance is necessary
> because of the physical limitations of the courtroom and hardship on the jurors, the
> defendants, and the Court.  Severance, however, should be of the most limited form
> necessary to satisfy those interests, because the Court finds that joinder of
> defendants, to the extent possible, will preserve judicial resources and permit the
> jury to have as complete a view of the evidence as possible."

United States v. DeLeon, 2017 WL 3054511, at *99 (quoting United States v. Gray, 173 F. Supp.
2d at 10). The Court concluded that a joint trial of nineteen defendants would "prevent the jury

from making a reliable judgment." United States v. DeLeon, 2017 WL 3054511, at *100.  The

Court also held that the "most logical, efficient, and manageable way to try this case is to sever"

the counts into two trials.  United States v. DeLeon, 2017 WL 3054511, at *103.

## LAW REGARDING RELEVANT EVIDENCE

The threshold issue in determining the admissibility of evidence is relevance.  As a

baseline, under the Federal Rules of Evidence, all evidence that is relevant is admissible -- unless

another law or rule excludes the evidence -- and any evidence that is not relevant is not admissible.

See Fed. R. Evid. 402.  The standard for relevance is very liberal.  See United States v. Leonard,

439 F.3d 648, 651 (10th Cir. 2006)("Rule 401 is a liberal standard.")(citing United States v.

McVeigh, 153 F.3d 1166, 1190 (10th Cir. 1998)).  The evidence need have only "any tendency to

make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  See United

States v. Leonard, 439 F.3d at 651.  "[A] fact is 'of consequence' when its existence would provide

the fact-finder with a basis for making some inference, or chain of inferences, about an issue that

is necessary to a verdict," but it only needs to have "any tendency" to do so.  United States v.

Jordan, 485 F.3d 1214, 1218 (10th Cir. 2007).  See United States v. Leonard, 439 F.3d at 651.

Although the threshold burden is low, the rules do "not sanction the carte blanche admission of

whatever evidence a defendant would like.  The trial judge is the gatekeeper under the Rules of

Evidence."  United States v. Jordan, 485 F.3d at 1218.

## LAW REGARDING RULES 401 AND 402 OF THE FEDERAL RULES OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion

of irrelevant and potentially prejudicial evidence."  Train v. City of Albuquerque, 629 F. Supp. 2d

1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402 & 403).  "Relevant

evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")).  "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'" United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note). Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible.  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989)(Baldock, J.).  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."  United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(Tacha, J.)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)(Brorby, J.)).  The Tenth Circuit has reminded district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."  United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010)(Baldock, J.).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999)(Kelly, J.), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983)(Ervin, J.); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980)(Russell, J.). The Supreme Court has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . . This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(Thomas, J.)(quoting 1 Steven Alan Childress & Martha S. Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed. 1999)). See United States v. Abel, 469 U.S. 45, 54 (1984)(Rehnquist, J.)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Evidence may be unfairly prejudicial if it would likely provoke the jury's emotional response or would otherwise tend to adversely affect the jury's attitude toward a particular matter. See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999)(Sanborn, J.). Evidence is not unfairly prejudicial merely because it damages a party's case. See United States v. Caraway, 534 F.3d at 1301; United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)(Ebel, J.); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991)(Holloway, J.). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(Hartz, J.)(quoting Fed. R. Evid. 403 advisory committee notes).

## ANALYSIS

Martinez argues that the Court should sever his felon-in-possession charge, Count 1, from his racketeering conspiracy charge, Count 2, because (i) the First Superseding Indictment has not reset the Speedy Trial Act clock for the felon-in-possession charge, and the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), therefore, requires that he be tried on the felon-in-possession charge by December 25, 2019; and (ii) evidence related to the racketeering conspiracy charge will be prejudicial to his felon-in-possession charge. <u>See</u> Motion at 4-13. The Court concludes that (i) the Speedy Trial Act clock for the felon-in-possession charge has never expired, because although the First Superseding Indictment did not reset the Speedy Trial Act clock, (a) the Speedy Trial Act clock had not expired at the time that the Court heard and orally denied the Motion; (b) the pretrial motions tolled the Speedy Trial Act clock, (c) the court granted two continuances, and (d) the Court declared the case complex under § 3161(h)(7)(b)(ii); and (ii) although the probative value of evidence of gang affiliation is often low, and the substantial danger of unfair prejudice to Martinez may outweigh the probative value of the gang affiliation evidence, it is too early to determine whether the Court would exclude the evidence on the limited record before the Court. Accordingly, because the Court cannot at this early point definitively conclude whether it would exclude the evidence of gang affiliation, and cannot therefore definitively determine whether the evidence would be prejudicial sufficiently to warrant severance under rule 14 of the Federal Rules of Criminal Procedure, the Court will deny the Motion without prejudice. The Court, however, will also allow Martinez to renew his severance motion with a robust motion in limine closer to trial if Martinez still wants the charges severed.

I.    **THE SPEEDY TRIAL ACT CLOCK FOR THE FELON-IN-POSSESSION CHARGE HAS NEVER EXPIRED, BECAUSE ALTHOUGH THE FIRST SUPERSEDING INDICTMENT DID NOT RESET THE SPEEDY TRIAL ACT CLOCK, THE PRETRIAL MOTIONS TOLLED THE SPEEDY TRIAL ACT CLOCK, THE COURT GRANTED TWO CONTINUANCES, AND THE COURT DECLARED THE CASE COMPLEX UNDER § 3161(h)(7)(B)(ii).**

Martinez argues that the Court should sever Count 1 from Count 2 in the First Superseding Indictment and allow him to proceed to trial on the felon-in-possession charge's original trial date,[8] separate from Count 2, because "delaying trial on the felon-in-possession charge will result in prejudice to Mr. Martinez because doing so would violate his speedy trial rights for that charge." Motion at 6.   "The dual purpose of the Speedy Trial Act is to protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings." United States v. Saltzman, 984 F.2d 1087, 1090 (10th Cir. 1993)(quoting United States v. Noone, 913 F.2d 20, 28 (1st Cir. 1990)). See 18 U.S.C. § 3161(c)(1). The Speedy Trial Act requires "that an accused person's trial must begin within seventy days of his indictment or initial appearance, whichever is later." United States v. Cano-Silva, 402 F.3d 1031, 1034 (10th Cir. 2006)(citing 18 U.S.C. § 3161(c)(1)). The Court concludes that (i) the First Superseding Indictment does not reset the Speedy Trial Act clock for the felon-in-possession charge; and (ii) the Speedy Trial Act clock has not been violated, because (a) the Speedy Trial Act clock had not expired at the time that the Court heard and orally denied the Motion; (b) pretrial motions tolled the Speedy Trial Act clock; (c) the Court granted two continuances; and (d) the Court declared the case complex.  Accordingly, because the Speedy Trial Act clock has not been violated, the Court will not sever the felon-in-possession charge.

_____

[8]When the Motion was filed, trial was originally set for December 16, 2019, see Notice of Jury Selection/Jury Trial at 1, filed October 24, 2019 (Doc. 21), but after the December 12 and 13, 2019, pretrial conference it was continued, see First Order to Continue Trial at 1.

A.    **THE FIRST SUPERSEDING INDICTMENT DOES NOT RESET THE SPEEDY TRIAL ACT CLOCK FOR THE FELON-IN-POSSESSION CHARGE, BECAUSE THE FIRST SUPERSEDING INDICTMENT RETAINS THE ORIGINAL COUNT OF FELON-IN-POSSESSION FROM THE INDICTMENT AND ADDS A NEW RACKETEERING CONSPIRACY CHARGE.**

When the United States filed the Indictment on October 16, 2019, charging Martinez with one count of felon-in-possession, see Indictment at 1, the seventy-day Speedy Trial Act clock started running, requiring trial to take place by December 25, 2019, see 18 U.S.C. § 3161(c)(1) (requiring trial to take place within seventy-days after "a defendant charged in an information or indictment"); United States v. Cano-Silva, 402 F.3d at 1034 (citing 18 U.S.C. § 3161(c)(1)).  The Court scheduled trial on the felon-in-possession charge for December 16, 2019.  See Notice of Jury Selection/Jury Trial at 1.  On December 11, 2019, the day of the pretrial conference, the United States filed the First Superseding Indictment, charging Martinez, in addition to the original felon-in-possession charge, with racketeering conspiracy.  See First Superseding Indictment at 1. Martinez contends that, "[b]ecause the First Superseding Indictment did nothing more than add a new charge, the Speedy Trial Act does not reset the Speedy Trial Clock for the charge contained in the original indictment."  Motion at 4.  The Court agrees with Martinez and concludes that the First Superseding Indictment does not reset the Speedy Trial Act clock for the felon-in-possession charge.

"As a general rule, new Speedy Trial Act periods begin to run with respect to an information or indictment adding a new charge not required to be brought in the original indictment."  United States v. Andrews, 790 F.2d 803, 808 (10th Cir. 1986).  "[T]he filing of a superseding indictment," however, "does not serve to toll the speedy trial clock" for the offenses charged in the original indictment.  United States v. Apperson, 441 F.3d 1162, 1181 (10th Cir.

2006)(citing United States v. Bermea, 30 F.3d 1539, 1567 (5th Cir. 1994)("The filing of a superseding indictment does not affect the speedy trial clock for offenses charged in the original indictment . . . .").  See United States v. Koerber, 813 F.3d 1262, 1280 n.24 (10th Cir. 2016)("[T]he [Speedy Trial Act] clock does not restart upon the return of a First Superseding Indictment.")(citing United States v. Mora, 135 F.3d 1351, 1355 (10th Cir. 1998)); United States v. Jones, 601 F.3d 1247, 1254 (11th Cir. 2010)("New charges added by a superseding indictment do not reset the speedy-trial timetable for offenses either charged in the original indictment or required under double jeopardy principles to be joined with such charges."); United States v. Garcia-Patino, No. 17-20038-DDC, 2019 WL 1779769, at *5 (D. Kan. Apr. 23, 2019)(Crabtree, J.)("[I]f the government files a superseding indictment charging a criminal defendant with additional offenses, this does not necessarily toll the 70-day speedy trial clock for the original charge."); United States v. Starks, No. 5:18-CR-40105-01-HLT, 2019 WL 1320335, at *2 n.2 (D. Kan. Mar. 23, 2019)(Hough, J.)(same).  See also United States v. Rojas-Contreras, 474 U.S. 231, 239 (1985)(Blackmun, J., concurring)("[I]t would make little sense to restart both the 30-day and 70-day periods whenever there is a superseding indictment."); United States v. Young, 528 F.3d 1294, 1296 (11th Cir. 2008)("[O]ur sister circuits that have likewise held that the filing of a superseding indictment does not reset the speedy-trial clock for offenses charged, or required to be joined with those charged, in the original indictment.")(citing United States v. Marshall, 935 F.2d 1298, 1302 (D.C. Cir. 1991); United States v. Gonzales, 897 F.2d 1312, 1316 (5th Cir. 1990); United States v. Long, 900 F.2d 1270, 1275 n.4 (8th Cir. 1990); United States v. Roman, 822 F.2d 261, 263-64 (2d Cir. 1987); United States v. Thomas, 788 F.2d 1250, 1258 (7th Cir. 1986);  United States v. Novak, 715 F.2d 810, 819 (3d Cir. 1983)).  In United States v. Apperson, 441 F.3d at 1181, the defendant was originally indicted with "one count of conspiring 'to manufacture,

distribute and dispense 10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD), a Schedule I controlled substance.'" United States v. Apperson, 441 F.3d at 1177 (quoting the record on appeal). The defendant was then charged with a superseding indictment, which "retained the original conspiracy count and added a second count alleging . . . [that the defendant] knowingly possessed with intent to distribute and dispense ten grams or more of a mixture or substance containing a detectable amount of LSD." United States v. Apperson, 441 F.3d at 1177. The Tenth Court concluded "that the filing of [the] superseding indictment does not serve to toll the speedy trial clock." United States v. Apperson, 441 F.3d at 1181 (citing United States v. Bermea, 30 F.3d at 1567). Similarly, the Honorable Daniel D. Crabtree, United States District Judge for the District of Kansas, concluded that, where the original "charges . . . included one of the same offenses charged in the Superseding Indictment," which added charges of conspiracy to distribute and possess with intent to distribute more than 50 grams of methamphetamine to the original charge of with intent to distribute methamphetamine, "did not toll [the defendant's] speedy trial clock for that [original] charge." United States v. Garcia-Patino, 2019 WL 1779769, at *5. See United States v. Trammer, No. 1:16-CR-01093-MV, 2019 WL 3843046, at *2 (D.N.M. Aug. 12, 2019)(Vázquez, J.)(concluding that, where "the superseding indictment . . . remained the same with the exception of Count 1, which Government explained was modified only to add an additional element to comply with a recent Supreme Court decision," the superseding indictment did not restart the Speedy Trial Act Clock)(citing United States v. Koerber, 813 F.3d at 1280 n.24, and United States v. Mora, 135 F.3d at 1355).

Sometimes it is unclear whether a superseding indictment adds a new charge not subject to

the original Speedy Trial Act clock or whether the new charge "only 'gilds'[9] the initial charge," where "the subsequent charge is subject to the same Speedy Trial Act limitations imposed on the earlier indictment." United States v. Andrews, 790 F.2d 803, 808 (10th Cir. 1986)(quoting United States v. Nixon, 634 F.2d 306, 309 (5th Cir. 1981)). See United States v. Bailon-Cruz, 351 F. Supp. 2d 1131, 1136 (D. Colo. 2004)(Blackburn, J.)("The superseding indictment in this case is a gilded indictment subject to the same Speedy Trial Act limitations applicable to the initial indictment"). For instance, the Tenth Circuit in United States v. Ray, 899 F.3d 852 (10th Cir. 2018), concluded that a superseding indictment which changed the original charge from

---

[9]"[A] gilded charge is one that merely annotates in more detail the same charge alleged in the initial accusatory instrument." United States v. Bailey, 111 F.3d 1229, 1236 (5th Cir. 1997)(noting that "Webster's Third New International Dictionary defines gilding as 'embellishing'[;] Webster's Collegiate Dictionary defines it as 'unnecessary ornamentation'"). With all due respect to the appellate courts that have chosen to use this non-legal word, they really should do better in creating a workable standard.

The Court, as an aside, notes that outside of the Tenth Circuit, the "gilding" exception has met with some pushback: for instance, the United States Court of Appeals for the Sixth Circuit has concluded "that there is no gilding exception to the Speedy Trial Act." United States v. Washington, 893 F.3d 1076, 1079 (8th Cir. 2018)("Given the unambiguous wording of the statute, it should hardly come as a surprise that courts recently 'have questioned [the gilding exception's] doctrinal validity' as applied to the Speedy Trial Act. We decline to read a 'gilding exception' into clear statutory language.")(quoting United States v. Trudeau, 812 F.3d 578, 587 (7th Cir. 2016)). See United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004)("The existence and contours of a gilding doctrine to expand the scope of § 3162(a)(1) beyond the express charges specifically pleaded in a complaint has generally been viewed with skepticism."); United States v. Derose, 74 F.3d 1177, 1184 (11th Cir. 1996), as modified (March 15, 1996)("Although we are not deciding whether a gilding exception is even applicable to the Speedy Trial Act, we note that this court's decision in United States v. Brooks, 670 F.2d 148 (11th Cir. 1982), raises some doubt about the vitality of the gilding exception in this circuit."). The Tenth Circuit, however, has shown no signs of changing course. See United States v. Ray, 899 F.3d at 863. See also United States v. Garcia-Patino, No. 17-20038-DDC, 2019 WL 1779769, at *5 (D. Kan. Apr. 23, 2019)(Crabtree, J.); United States v. Starks, No. 5:18-CR-40105-01-HLT, 2019 WL 1320335, at *2 (D. Kan. Mar. 23, 2019)(Hough, J.). If the Court were working on a clean slate, it would use a plain language statutory interpretation of the Speedy Trial Act and drop the gilding exception. See, e.g., United States v. Washington, 893 F.3d at 1079. The Court as a district court, however, must follow the Tenth Circuit's decision and will attempt to do so faithfully here.

"prepar[ing] false tax returns *for others* and aided and abetted in the preparation of false tax returns *for others*," to "preparing *his own* false tax returns," reset the defendant's Speedy Trial Act clock, because the new charge was "'not required to be brought in the original indictment.'"  United States v. Ray, 899 F.3d at 863 n.4 (emphasis in the original)(quoting United States v. Andrews, 790 F.2d at 809).  Similarly, in United States v. Olivo, 69 F.3d 1057 (10th Cir. 1995), opinion supplemented on reh'g, 80 F.3d 1466 (10th Cir. 1996), the Tenth Circuit concluded that the superseding indictment reset the Speedy Trial Act clock, because "superseding indictment added an additional conspiracy count and expanded the existing conspiracy count by joining three new codefendants and lengthening the period of the conspiracy."  United States v. Olivo, 69 F.3d at 1062 (stating that the superseding indictment, by adding an additional conspiracy count, "does more than merely 'gild' counts previously charged").

Here, the Indictment charges Martinez with one count of felon-in-possession, see Indictment at 1, and the First Superseding Indictment retains the original count and adds a racketeering conspiracy charge, see First Superseding Indictment at 1.  The First Superseding Indictment, therefore, does not reset the Speedy Trial Act clock for the felon-in-possession charge. See United States v. Apperson, 441 F.3d at 1181; United States v. Koerber, 813 F.3d at 1280 n.24; United States v. Mora, 135 F.3d at 1355.  The new charge in the First Superseding Indictment starts its own Speedy Trial Act clock, "does more than merely 'gild' counts previously charged." United States v. Olivo, 69 F.3d at 1062 (quoting United States v. Andrews, 790 F.2d at 809).  If the First Superseding Indictment had merely expanded on the original felon-in-possession charge, rather than adding a new charge, with new alleged facts, then the it could possibly be a "gilded" charge. See United States v. Ray, 899 F.3d at 863 n.4.  Here, in contrast to United States v. Ray, the new charge does not gild the original charge, because the new charge of racketeering

conspiracy is distinct from the felon-in-possession charge and adds new alleged facts, see First Superseding Indictment at 1-12, and therefore it does more than "merely annotates in more detail the same charge alleged in the initial accusatory instrument," United States v. Bailey, 111 F.3d at 1236, instead it expands greatly on the original charged conduct, see Callanan v. United States, 364 U.S. 587, 593 (1961)("The distinctiveness between a substantive offense and a conspiracy to commit is a postulate of our law.  'If has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses.'")(quoting Pinkerton v. United States, 328 U.S. 640, 643 (1946)).  Cf. United States v. Derose, 74 F.3d 1177, 1184 (11th Cir. 1996)(concluding that, because "conspiracies and substantive offenses are separate and distinct offenses requiring proof of different elements[,] . . . it is questionable whether a substantive offense can ever gild a conspiracy charge, since they are separate and distinct offenses.")(citing Callanan v. United States, 364 U.S. at 593), as modified (March 15, 1996).

**B.    THE SPEEDY TRIAL ACT CLOCK HAD NOT EXPIRED AT THE TIME THAT THE COURT HEARD AND ORALLY DENIED THE MOTION, AND SINCE THEN, THE SPEEDY TRIAL ACT CLOCK HAS NOT EXPIRED.**

The Speedy Trial Act provides that certain periods of delay are not included in computing the time limits for trial.  See 18 U.S.C. § 3161(h).  See also 18 U.S.C. § 3161(h)(7)(B) (setting forth the factors "which a judge shall consider in determining whether to grant a continuance . . .").  The Court concludes that the Speedy Trial Act clock for the felon-in-possession charge has not expired, because (i) the Speedy Trial Act clock had not expired at the time that the Court heard and orally denied the Motion; (ii) the Speedy Trial Act clock has never expired; (iii) the Motion tolled the Speedy Trial Act clock for one day, see 18 U.S.C. § 3161(h)(1)(D); (iv) the Court granted a thirty-day and then a ninety-day continuance under 18 U.S.C. § 3161(h)(7) before trial was scheduled to take place; (v) the Joint Motion to Declare the Case Complex tolled the Speedy Trial

Act clock for seven days, see 18 U.S.C. § 3161(h)(1)(D); and (vi) the Court declared the case complex on the parties' joint motion removing the seventy-day Speedy Trial Act clock restrictions, see 18 U.S.C. § 3161(h)(7)(B)(ii).

From the time that the Speedy Trial Act clock started running for the felon-in-possession charge on October 16, 2019, when the United States filed the Indictment, see Indictment at 1, until Martinez filed his Motion on December 12, 2019, no time had been excluded from the Speedy Trial Act clock.  See 18 U.S.C. § 3161(h) (listing instances tolling the Speedy Trial Act clock). Filing the Motion tolled the Speedy Trial Act clock.  See 18 U.S.C. § 3161(h)(1)(7) (tolling any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion").  At the time that Martinez filed the Motion, thirteen days remained on the Speedy Trial Act clock, because no pretrial motions had been filed and fifty-seven days had elapsed.  See 18 U.S.C. § 3161(c)(1) (requiring trial to take place within seventy-days after "a defendant charged in an information or indictment"); United States v. Cano-Silva, 402 F.3d at 1034 (citing 18 U.S.C. § 3161(c)(1)).  At the December 13, 2019, pretrial conference, the Court orally denied the Motion; the Speedy Trial Act clock was therefore tolled for one day.  See Dec. 13. Tr. at 41:43-9 (Court);[10] 18 U.S.C. § 3161(h)(1)(D).  After the Court orally denied the Motion, Martinez did not oppose the Motion to continue.  See Dec. 13 Tr. at 22:8-20 (Hart); id. at 45:9-46:15 (Harrison); id. at 47:2-20 (Harrison, Court); id. at 48:6-18 (Court, Harrison).  Consequently, the Court then orally granted the United States Motion to

---

[10]Although the Court stated at the December 13, 2019, pretrial conference that it was "not prepared today to grant a motion to sever," and that it would "take the motion and look at it, but I'm not inclined to grant it," the Court effectively denied it for purposes of the Speedy Trial Act clock.  See Dec. 13. Tr. at 43:7-12 (Court).  The Court's MOO shows that the Court has carefully considered the issue, but any time between the December 13, 2019 pretrial conference and the filing of this MOO does not toll the Speedy Trial Act clock.

Continue Trial for thirty days on both counts under 18 U.S.C. § 3161(h)(7), rescheduling trial for January 15, 2020.  See Dec. 13 Tr. at 47:14-20 (Court); First Order to Continue Trial at 1-2.

On January 9, 2020, the United States filed the Second Superseding Indictment, which, as with the First Superseding Indictment, see Analysis § I(A), supra, did not reset the Speedy Trial Act clock for the felon-in-possession charge, see United States v. Apperson, 441 F.3d at 1181; United States v. Koerber, 813 F.3d at 1280 n.24; United States v. Mora, 135 F.3d at 1355.  Then, on January 14, 2020, the Court granted the unopposed Second Motion to Continue Trial for ninety days under 18 U.S.C. § 3161(h)(7), rescheduling trial for April 14, 2020.  See Second Order to Continue Trial at 3.  On February 5, 2020, the parties filed the Joint Motion to Declare the Case Complex, see Joint Motion to Declare the Case Complex at 1, tolling the Speedy Trial Act clock for seven days until the Court granted that motion on February 12, 2020, see Order Declaring the Case Complex at 1.  See also 18 U.S.C. § 3161(h)(1)(D).  Because the Court declared the case complex under 18 U.S.C. § 3161(h)(7)(B)(ii),

> all of the time from the filing of the Motion to Declare the Case Complex until the beginning of the jury trial in this matter shall be excluded for the purposes of the Speedy Trial Act, and the ends of justice in granting the requested continuance outweigh the best interest of the public and the defendant in a speedy trial.

Order Declaring the Case Complex at 2.  Based on the foregoing procedural history, the Court concludes that the Speedy Trial Act clock for the felon-in-possession charge has not expired, because (i) when the Court heard and orally denied the Motion, the Speedy Trial Act clock had not expired; (ii) subsequently, the Speedy Trial Act clock has never expired; (iii) the Motion and the Joint Motion to Declare the Case Complex tolled the Speedy Trial Act clock for eight days; (iv) the Court granted two continuance under 18 U.S.C. § 3161(h)(7) before trial was scheduled to take place; and (v) the Court declared the case complex.  See 18 U.S.C. §§ 3161(h)(1)(D), (h)(7)(B)(ii).  Accordingly, the Court concludes that Martinez's Speedy Trial Act rights have not

been violated.[11]

_____

[11]Martinez argues that, if the Court does not sever the two charges in the First Superseding Indictment and allow him to proceed to trial on the felon-in-possession charge, his Speedy Trial Act rights will be violated, because he has right to go to trial on his felon-in-possession charge independent of the other charges entered against him.  See Motion at 4.  Although Martinez is correct that the First Superseding Indictment does not toll his Speedy Trial Act clock for the felon-in-possession charge, the remedy that the Speedy Trial Act contemplates for a violation of his Speedy Trial Act clock is dismissal of his felon-in-possession charge.  See 18 U.S.C. § 3162(a)(2). Section 3162(a)(2) states that, if a defendant is not brought to trial within seventy days, as extended by the excluded time, the "indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). "'While dismissal of the indictment is mandatory [under § 3162(a)(2)], the district court retains discretion to determine whether the indictment is dismissed with or without prejudice.'"  United States v. Koerber, 813 F.3d at 1273 (quoting United States v. Cano-Silva, 402 F.3d 1031, 1034 (10th Cir. 2005)).

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice.

18 U.S.C. § 3162(a)(2).  See 18 U.S.C. § 3288 (permitting the United States, when a count is dismissed without prejudice, to return "a new indictment . . . within six calendar months of the date of the dismissal" in the event the statute of limitations has run). Because the Speedy Trial Act's seventy-day requirement has not yet been violated dismissal, is not the appropriate remedy. See 18 U.S.C. § 3162(a)(2).

Martinez argues that "that potential violations of the Speedy Trial Act may create prejudice which requires the severance of a defendant from a trial."  Motion at 5 (citing United States v. Baca, No. CR 16-1613 JB, 2016 WL 6404772, at * 31 (D.N.M. Oct. 20, 2016)(Browning, J.)(citing United States v. Byrd, 466 F. Supp. 2d 550 (S.D.N.Y. 2006)(Rakoff, J.)).  Martinez cites United States v. Baca, but that case is not directly on point, because, as Martinez admits, it deals with the severance of a defendant from co-defendants and not severance of a count from the indictment. See United States v. Baca, 2016 WL 6404772, at *31.  The circumstances there were unique, the Court explained: "The unusual circumstances of Gallegos' case -- he was ready to try the murder case in state court when the state dismissed that case -- gets Gallegos over the large hurdle of prejudice that is needed for a severance."  United States v. Baca, 2016 WL 6404772, at *32. Speedy Trial concerns were but one factor the Court considered.  See United States v. Baca, 2016 WL 6404772, at *30-32 (discussing (i) whether "'the defenses presented are so antagonistic that they are mutually exclusive'"; (ii) risk to "'a specific trial right'"; and (ii) prejudice)(quoting United States v. Pursley, 474 F.3d 757, 765 (10th Cir. 2007)).  See also United States v. Magnotti, 51 F.R.D. 1, 1 (D.C. Conn. 1970)(Oakes, J.)("The factor of delay in the trial of one defendant is another that might well be taken into account.").  In United States v. Baca, the Court concluded that "[i]f the Court does not sever, [the defendant] will have to wait for discovery to be complete

II.   **THE COURT CANNOT, AT THIS STAGE OF THE CASE, ON THE LIMITED RECORD BEFORE IT, DETERMINE DEFINITIVELY WHETHER IT WOULD EXCLUDE EVIDENCE OF GANG AFFILIATION OR MEMBERSHIP FOR THE FELON-IN-POSSESSION CHARGE UNDER RULE 403, AND IT IS THEREFORE PREMATURE TO RULE WHETHER TO SEVER THE TWO COUNTS.**

Martinez argues that the Court should sever his felon-in-possession charge, Count 1, from his racketeering conspiracy charge, Count 2, under rule 14 of the Federal Rules of Criminal Procedure, because Count 2 would admit evidence of gang affiliation or membership, which is not relevant and highly prejudicial to the felon-in-possession charge, and, therefore, would not be not admissible under rules 401, 402, and 403 of the Federal Rules of Evidence if the felon-in-possession charge were tried on its own. See Motion at 6-13. The Court concludes that (i) joinder is proper under rule 8(a) of the Federal Rules of Criminal Procedure; (ii) evidence of gang affiliation or membership is relevant to the felon-in-possession charge and is therefore not a reason to sever on its own under rule 14; and (iii) although the probative value of evidence of gang affiliation or membership is often low, and the substantial danger of unfair prejudice to Martinez may outweigh the probative value of the gang affiliation or membership evidence, it is too early

---

as to all Defendants, pre-trial motions as to all Defendants, and then, ultimately, the trial against him and all eleven of his co-Defendants." United States v. Baca, 2016 WL 6404772, at *31 (citing United States v. Byrd, 466 F. Supp. 2d 550 (S.D.N.Y. 2006)(Rakoff, J.)). See United States v. Baca, 2016 WL 6404772, at *31 ("'When many defendants are tried together in a complex case and they have markedly different degrees of culpability, the risk of prejudice that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence is heightened.'")(quoting Zafiro v. United States, 506 U.S. at 539). Contrary to Martinez' assertion that a "violation of Mr. Martinez's rights under the Speedy Trial Act . . . itself justifies severance," Motion at 4, a violation of the Speedy Trial Act clock is but one factor the Court can consider in a motion to sever, see United States v. Baca, 2016 WL 6404772, at *31-32; United States v. DeLeon, No. CR 15-4268 JB, 2017 WL 3054511, at *4 n.6 (D.N.M. June 30, 2017)(Browning, J.)(noting that in United States v. Baca, "it was clearly the speedy trial concerns which tipped the scale of prejudice in [the defendant's] favor" on the motion to sever)(citing United States v. Baca, 2016 WL 6404772 at *32); United States v. Castillo, No. CR 15-0205 JH, 2015 WL 13659235, at *9 (D.N.M. Aug. 6, 2015)(Herrera, J.)("Where a delay causes prejudice, then the delay may require a severance.")(citing Fed. R. Crim. P. 14(a)).

to determine whether the Court would exclude that evidence on this record.

### A.      THE TWO COUNTS ARE PROPERLY JOINED UNDER RULE 8, WHICH IS CONSTRUED LIBERALLY.

Rule 8(a) provides for joinder of offenses that "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  "Rule 8 is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system."  United States v. Janus Indus., 48 F.3d 1548, 1557 (10th Cir. 1995).  Here, the First Superseding Indictment alleges that for Count 2, Martinez committed 16 overt acts in furtherance of the conspiracy.  See First Superseding Indictment ¶¶ 18, at 8-11. Three of the overt acts allege that Martinez either possessed or used a handgun: (i) Overt Act 11 alleges that, on March 12, 2008, Martinez "possessed a handgun . . ."; (ii) Overt Act 13 alleges that, on October 24, 2018, Martinez "possessed a firearm and ammunition"; and (iii) Overt Act 14 alleges that on October 24, 2019, Martinez "did unlawfully and knowingly shoot a rival, D.S."  First Superseding Indictment ¶ 18, at 10-11.  At the pretrial hearing, the United States stated that the Court would hear all the same evidence for the felon-in-possession charge and racketeering charge, regardless whether they were tried together or separately.  See Dec. 12 Tr. at 13:2-20 (Armijo, Court).  The Court concludes that joinder of Counts 1 and 2 is proper under rule 8(a), because Counts 1 and 2 (i) arise from the same series of events, see First Superseding Indictment ¶ 18, at 10-11; (ii) will involve overlapping witnesses and the same evidence, see Dec. 12 Tr. at 13:2-20 (Armijo, Court); and (iii) the Martinez' possession of a firearm is part of the scheme or plan related to the SNM gang, see United States v. Cox, 934 F.2d 1114, 1119 (10th Cir. 1991)(upholding a district court's refusal to sever firearm possession counts from drug trafficking counts, where government demonstrated that defendant possessed the firearms as part of scheme or plan to possess and distribute drugs, and police seized both weapons and narcotics at the same time and

place); United States v. Esch, 832 F.2d 531, 538 (10th Cir. 1987)("Where the evidence overlaps, the offenses are similar . . . joinder of . . . offenses is proper."); Fed. R. Crim. P. 8(a).

### B.    IT IS PREMATURE TO DETERMINE WHETHER THE EVIDENCE OF GANG AFFILIATION OR MEMBERSHIP IS ADMISSIBLE IN A STAND-ALONE FELON-IN-POSSESSION CASE.

Even if joinder is proper under Rule 8, the Court may order separate trials for the offenses if the joinder of the offenses would prejudice the defendant. See Fed. R. Crim. P. 14(a). The Court has discretion to determine whether it should sever offenses. See United States v. Martin, 18 F.3d 1515, 1517 (10th Cir. 1994). The defendant bears a heavy burden of showing real prejudice in his or her case sufficient to warrant severance. See United States v. Martin, 18 F.3d at 1518. To establish real prejudice, the defendant must show that the prejudice he will suffer outweighs the expense and inconvenience of separate trials. See United States v. Martin, 18 F.3d at 1518. The Court should consider other remedial measures that will minimize the risk of prejudice, see United States v. Lane, 883 F.2d 1484, 1498 (10th Cir. 1989), such as limiting instructions, which can cure the risk of prejudice, see Zafiro v. United States, 506 U.S. 534, 539 (1993).

Martinez argues that the evidence of gang affiliation or membership is prejudicial because it is not cross-admissible -- i.e., although gang affiliation or membership might be admissible for his racketeering conspiracy charge, it is not admissible for the felon-in-possession charge -- and that the inadmissibility therefore cuts in favor of severance. See Motion at 6-13 (citing Fed. R. Evid. 401, 402, and 403). Previously, the Court has held the converse of Martinez' proposition to be true: Where evidence of one count would be admissible in the trial of another count, the Court has held that it will not sever the two counts for trial, because trying the two counts together is not unfairly prejudicial and preserves judicial resources. See, e.g., United States v. Woody, 469 F. Supp. 3d 1163, 1173 (D.N.M. 2020)(Browning, J.)("Because evidence of Count 1 and Count 2 would be admissible in the trial of the other, the Court will try the counts together."); United States

v. DeLeon, 323 F.R.D. 672, 690-94 (D.N.M. 2017)(Browning, J.)(concluding that, because evidence for Count 8 through 12 would be admissible in a defendant's trial for Counts 6 and 7, severance of the counts was not warranted). Cf. United States v. Neha, No. CR 04-1677 JB, 2005 WL 3663695, at *4 (D.N.M. Sept. 13, 2005)(Browning, J.)("[T]he Court should not grant [the defendant's] motion to sever his trial from that of [his co-defendant'] until it knows whether the evidence would be admissible in a separate trial."). Some courts do apply Martinez' proposed standard as a per se rule, while others do not. Compare United States v. Lewis, 787 F.2d 1318 (9th Cir. 1986)(noting that there is "a high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible."); United States v. Busic, 587 F.2d 577, 585 (3d Cir. 1978)(suggesting that severance should be granted where evidence of the prior conviction would be admissible on one or more counts but inadmissible on others), rev'd on other grounds, 446 U.S. 398 (1980), with United States v. Mackey, 117 F.3d 24 (1st Cir. 1997)("Joinder of counts is often maintained even where evidence of one crime would not be admissible as substantive proof of the other."). See also United States v. Hawkins, 776 F.3d 200, 206-207 (4th Cir. 2015)(stating that "[j]oinder of offenses "are based on the same act or transaction . . . or a common scheme or plan' presents the opportunity to submit evidence of one offense that ordinarily would be admissible at a separate trial for the other[;] [h]owever when offenses are joined based on their same or similar character, 'admissibility at separate trials is not so clear'")(quoting United States v. Foutz, 540 F.2d 733, 737 (4th Cir. 1976)). The Tenth Circuit has recognized "the persuasiveness" of the cross-admissibility test stated by the United States Court of Appeals for the Third Circuit in United States v. Busic "as an important factor in determining whether severance is advisable to assure a fair trial," but has not adopted it is as an per se rule. United States v. Valentine, 706 F.2d 282, 290

(10th Cir. 1983)(citing <u>United States v. Busic</u>, 587 F.2d at 585).

Martinez does not dispute that evidence of gang affiliation or membership is admissible for his racketeering conspiracy charge.   <u>See</u> Motion 6-13.   Instead, Martinez argues that the admission of evidence related to allegations of his SNM gang affiliation or membership would be inadmissible at a separate trial on his felon-in-possession charge, because (i) the racketeering conspiracy involves evidence of Martinez' alleged gang affiliation or membership, which is irrelevant and should be excluded, <u>see</u> Motion at 7 (citing Fed. R. Civ. P. 401 & 402); and (ii) "unfair prejudice of any evidence related to gang affiliation or membership outweighs any probative value of such evidence," Motion at 10.   The Court agrees with the general proposition that if evidence is not cross-admissible, that the inadmissibility is a factor in favor of severance, because rule 14(a) of the Federal Rules of Criminal Procedure disfavors joinder, where joinder "appears to prejudice a defendant." Fed. R. Crim. P. 14(a).   <u>See</u> <u>United States v. Valentine</u>, 706 F.2d at 290. The Court concludes that (i) evidence of gang affiliation or membership is relevant to whether he possessed a firearm; (ii) the probative value of this evidence may be low, and the substantial danger of unfair prejudice to Martinez may outweigh any probative value; but (iii) on the thin record before the Court, it is premature to determine whether the evidence of gang affiliation or membership is admissible.

### 1.   <u>Evidence of Gang Affiliation or Membership Is Relevant to Whether Martinez Possessed a Firearm.</u>

Relevant evidence is admissible unless the Constitution, a federal statute, the Federal Rules of Evidence, or a rule prescribed by the Supreme Court provides otherwise. <u>See</u> Fed. R. Evid. 402. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. A fact of consequence "may

be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action." Fed. R. Evid. 401 advisory committee notes. The Court has recognized that rule 401 provides a low hurdle for finding evidence relevant. See Coffey v. United States, No. CIV 08–0588 JB/LFJ, 2012 WL 1698289, at *4 (D.N.M. May 8, 2012)(Browning, J.)("Rule 401 contains a low threshold for relevance, because '[a]ny more stringent requirement is unworkable and unrealistic.'")(quoting Fed. R. Evid. 401 advisory committee's note). See also United States v. Aranda-Diaz, 31 F. Supp. 3d 1285, 1296 (D.N.M. 2014)(Browning, J.). For instance, in United States v. Aranda-Diaz, the Court concluded that a defendant's "statements that implicate his membership in a gang are relevant to whether he is a drug dealer or, as the Indictment charges, that he distributed drugs on October 2, 2012." United States v. Aranda-Diaz, 31 F. Supp. 3d at 1296 (noting that the "connection between gangs and drug trafficking has been widely publicized"). The Court explained: "Because [the defendant's] statements evince his membership in a gang, they are relevant, because many gang members are involved in drug trafficking. Accordingly, the Court will not exclude them under rule 402." United States v. Aranda-Diaz, 31 F. Supp. 3d at 1297.

The same holds true here: evidence of Martinez' gang affiliation or membership is relevant to his felon-in-possession charge, because many gang members are known to carry weapons, and the SNM gang is known to traffic in firearms. See First Superseding Indictment ¶ 1, at 1 (stating that the "SNM['s] . . . members engaged in acts of violence and other criminal activities, including, murder, kidnapping, attempted murder, conspiracy to manufacture/distribute narcotics, and firearms trafficking."). Martinez argues that the evidence of gang affiliation or membership can be relevant only "'to issues of identity, joint venture and existence of a conspiracy,'" as well as impeachment. Motion at 7 (quoting United States v. Hill, No. 12-CR-50-JHP, 2012 WL

12540234, at *2 (N.D. Okla. Nov. 20, 2012)(Payne, J.) and citing United States v. Brown, 200 F.3d 700, 708 (10th Cir. 1999); United States v. Robinson, 978 F.2d 1554, 1562 (10th Cir. 1992)). None of the cases Martinez cites limit evidence of gang affiliation or membership to these four categories; instead, the cases explain situations in which gang affiliation or membership is relevant and place no outer boundaries on the relevancy of gang affiliation or membership. See United States v. Brown, 200 F.3d at 708 (recognizing that evidence of gang affiliation is relevant to show the basis of the relationship between the defendant and witnesses; identity; joint venture; and the existence of conspiracy); United States v. Elkins, 70 F.3d 81, 83 (10th Cir. 1995)(recognizing that "in specific contexts gang membership testimony to show the bias of a witness can be admissible" if the United States "demonstrates 'the defendant and the witness to be impeached belong to the same gang.'")(quoting United States v. Keys, 899 F.2d at 986); United States v. Robinson, 978 F.2d at 1562 ("We are persuaded that associational evidence may be directly relevant on the issues of formation, agreement and purpose of a conspiracy."); United States v. Hill, 2012 WL 12540234, at *2 ("As a general rule, evidence of gang affiliation is relevant to issues of identity, joint venture and existence of a conspiracy."). See also United States v. Robinson, 978 F.2d 1554, 1562 (10th Cir. 1992)(recognizing that evidence that the defendant was a "skinhead" was relevant to showing that the alleged crime was racially motivated and was wrapped up with the elements of the alleged crime)(citing United States v. Skillman, 922 F.2d 1370 (9th Cir. 1990)). Accordingly, the Court concludes that evidence of Martinez' gang affiliation or membership is relevant to his felon-in-possession charge and is not a reason on its own to sever.

> **2.      The Probative Value Of Evidence Of Gang Affiliation or Membership Is Often Low, and the Substantial Danger of Unfair Prejudice to Martinez May Outweigh the Probative Value of the Gang Evidence, But It Is Hard to Say Definitively at this Early Stage of the Case and on the Present, Sparse Record.**

Relevancy is only the first, and lowest, hurdle evidence must cross. See Coffey v. United

States, 2012 WL 1698289, at *4.  Even if evidence is relevant, rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  "Even if" evidence of gang affiliation or membership is relevant, "the district court must also conclude the evidence is more probative than prejudicial."  United States v. Tsosie, 288 F. App'x 496, 499 (10th Cir. 2008)(citing United States v. Keys, 899 F.2d at 986-87 and Fed. R. Evid. 403).  Evidence of gang affiliation or membership "is not admissible where it is meant merely to prejudice the defendant or prove his guilt by association with unsavory characters."  United States v. McKay, 431 F.3d 1085, 1093 (8th Cir. 2005).  See United States v. Elkins, 70 F.3d 81, 84 (10th Cir. 1995)(holding that evidence of gang membership was not admissible in firearms prosecution to impeach defense witness' testimony on grounds of bias, where there was no evidence that defendant and witness were members of same gang, or that witness was biased because of fear of defendant's gang).

As the Court stated at the hearing, if it was trying the felon-in-possession charge by itself, it "would . . . lean over backwards to keep . . . out" evidence of gang affiliation or membership, because of the risk of prejudice, unless there was a proper basis to admit it.  Dec. 13 Tr. at 28:12-17 (Court).  Although gang affiliation or membership is relevant whether Martinez possessed a firearm, the probative value is minimal, because it offers only weak circumstantial evidence and no direct evidence.  See, e.g., United States v. Aranda-Diaz, 31 F. Supp. 3d at 1296-97.  The risk of prejudice, however, is often high.  See United States v. Brown, 288 Fed. App'x 518, 524 (10th Cir. 2008)(unpublished); United States v. McKay, 431 F.3d at 1093; United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999)("Evidence is unfairly prejudicial if it makes a conviction more

likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.")(quotations omitted).   See also Eisen, Mitchell L., Examining the Prejudicial Effects of Gang Evidence on Jurors, Journal of Forensic Psychology Practice, 13:1, 1-13,   DOI:   10.1080/15228932.2012.713831,   also   available   at https://doi.org/10.1080/15228932.2012.713831 (January 22, 2013)(concluding, based on a study of 315 participates, that evidence of gang affiliation or gang membership increased the likelihood of conviction: "43.8% of participants in the no-gang condition found the defendant guilty, compared to 59.2% in the gang affiliate condition and 62.5% in the hardcore gang condition"). The Tenth Circuit has concluded that the admission of gang evidence was improper where "[t]he admission of [the defendant's] gang membership," in a non-conspiracy drug case to show intent to distribute, "had the potential to elicit an unfavorable reaction from the jury increasing the danger of 'guilt by association.'"   United States v. Brown, 288 Fed. App'x at 524 (quoting United States v. McKay, 431 F.3d at 1093).  Following the reasoning of United States v. Brown, the Court has concluded that

> evidence of [the defendant's] gang membership presents a substantial danger of unfair prejudice to [the defendant], as it has the potential to elicit an unfavorable reaction from the jury and cause the jury to condemn him for his gang membership, rather than decide the case on the evidence that the United States presents against him at trial on this specific drug transaction.

United States v. Aranda-Diaz, 31 F. Supp. 3d at 1298.

Here, Martinez argues that "there is a high risk that the jury might use evidence of gang affiliation or membership to conclude that Mr. Martinez possessed a firearm, rather than consider the United Sates' evidence against him."  Motion at 10-11.  Martinez also argues that, according to Old Chief v. United States, 519 U.S. 172, 191-92 (1997), "introducing evidence of Mr. Martinez's alleged gang affiliation is likely to support a conviction on some improper ground,"

because the jury will infer "that because Mr. Martinez is an alleged gang member, he is a bad person." Motion at 11.  If the United States offers evidence of gang affiliation or membership only as propensity evidence that Martinez had possession of a firearm, the Court would agree that the danger of unfair prejudice the admission of gang affiliation or membership evidence presents to Martinez substantially outweighs the evidence' minimal probative value.  See United States v. Aranda-Diaz, 31 F. Supp. 3d at 1298.  Accordingly, in a situation where the Court is trying the felon-in-possession charge as its own case, the Court likely would exclude evidence of gang affiliation or membership under rule 403.  It is unclear, however, on what basis the United States would offer evidence of gang affiliation or membership in a case charging Martinez with only one count of a felon-in-possession, if at all.  See, e.g., United States v. Peete, 781 F. App'x 427, 438-39 (6th Cir. 2019)(concluding that evidence of gang affiliation or membership could be intrinsic to case if "it is the catalyst for all of the events underlying the charged crime"); United States v. Brown, 200 F.3d at 708 (gang affiliation can show the basis of the relationship between the defendant and witnesses; identity; joint venture; and the existence of conspiracy); United States v. Elkins, 70 F.3d at 83 (gang membership testimony can show bias); United States v. Keys, 899 F.2d at 986 (same); United States v. Robinson, 978 F.2d at 1562 (relevant and potentially admissible for issues of formation, agreement and purpose of a conspiracy); United States v. Hill, 2012 WL 12540234, at *2 (noting that evidence of gang affiliation can be admissible to establish identity, joint venture and existence of a conspiracy).

Although it is likely that the Court would exclude any evidence of gang affiliation offered as propensity evidence, the Court cannot be sure at this point in the case.  On a motion in limine, at the hearing, the Court would press the United States why it wants to introduce the evidence, if at all.  The Court would then hear from Martinez why that evidence is not needed.  In particular,

it would press Martinez to tell the Court what his defenses are going to be, so it can see whether the United States needs the evidence at all.  Often there are concessions.  In exchange for the defendant not implying or arguing, in opening, closing, on direct, or on cross-examination, a particular issue, the United States might not try to introduce a fact.  Often, the trial is scripted out in spots to keep the evidence out while not prejudicing the United States.

Here, the Court is operating in a vacuum, without the benefit of that knowledge and value of the evidence to the United States.  The Court does not know much about the felon-in-possession charge and how the parties want to try it.  If Martinez is going to imply that he never owned guns, never wants guns, and has no need to own guns, then gang affiliation or membership could be admissible.  See United States v. Elkins, 70 F.3d at 83.  The Court just does not know at this stage of the case what the parties and it would do on a motion in limine for a separate charge trial.

What the Court knows is that it would be a tremendous waste of the Court's and the parties' resources if the Court severed the case, and then did not exclude the gang affiliation or membership evidence in the trial for the felon-in-possession charge.  See United States v. Hall, 473 F.3d at 1301-02 ("Joint trials of defendants who are indicted together are preferred, because 'they promote efficiency . . . .'")(quoting Zafiro v. United States, 506 U.S. at 537).  That is a certainty.  Because the Court does not know whether evidence of gang affiliation or membership is admissible at this stage of the case, the Motion is premature.  See United States v. Neha, 2005 WL 3663695, at *3 (concluding that the "motion to sever is still premature"); id. at *4 ("[T]he Court should not grant [the defendant's] motion to sever his trial from that of [another defendant] until it knows whether the evidence would be admissible in a separate trial.").  If Martinez still wants to sever the counts, he needs to renew his severance motion with a motion in limine closer to trial, so that the Court has a more robust record to consider.

**IT IS ORDERED** that the Defendant's Motion to Sever Offenses, filed December 12, 2019 (Doc. 36), is denied without prejudice for renewal at a later stage as a motion in limine.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
    United States Attorney
Maria Ysabel Armijo
Randy M. Castellano
Ryan Ellison
    Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

    *Attorneys for the Plaintiff*

Carter B. Harrison, IV
Nicholas Thomas Hart
Harrison & Hart, LLC
Albuquerque, New Mexico

    *Attorneys for the Defendant*