**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                              No. CR 19-3725 JB

JODY RUFINO MARTINEZ,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on (i) the United States' Proposed Jury Instructions, filed February 16, 2021 (Doc. 138); (ii) the Defendant's Proposed Jury Instructions, filed February 17, 2021 (Doc. 150)("Martinez' Proposed Jury Instructions"); (iii) the United States' Objections to Defendant's Proposed Jury Instructions, filed February 22, 2021 (Doc. 158)("United States' Objections"); and (iv) the Defendant's Objections to the Government's Proposed Jury Instructions, filed February 23, 2021 (Doc. 164)("Martinez' Objections"). The Court held a hearing on February 26 and 27, 2021. See Minute Order, filed February 24, 2021 (Doc. 178)(text only entry)(notifying parties of the hearing). The primary issues are: (i) whether the fourth element of jury instruction for Count 1, Violent Crimes in Aid of Racketeering Act, 18 U.S.C. § 1959(a) ("VICAR"), of the Second Superseding Indictment, filed January 9, 2020 (Doc. 56), should include an instruction on second-degree murder under New Mexico law, because New Mexico second-degree murder corresponds to generic murder; (ii) whether the jury instructions for VICAR murder should include all four elements of New Mexico second-degree murder and sufficient provocation, because the United States' Proposed Jury Instructions omit one element of Mexico second-degree and omit the definition of sufficient provocation; and (iii) whether the jury

instructions for VICAR murder should include instructions both for murder under New Mexico law and for generic murder. The Court concludes (i) the Plaintiff United States of America's proposed jury instruction for VICAR murder properly includes an instruction on second-degree murder under New Mexico law, because New Mexico second-degree murder corresponds to generic murder; (ii) the jury instructions for VICAR murder should include an instruction on all four elements of New Mexico second-degree murder and should include the definition of sufficient provocation, because the United States' Proposed Jury Instructions unnecessarily omit these, see NMRA UJI Criminal §§ 14-210, -222; and (iii) the jury instructions for VICAR murder should not include instructions both for murder under New Mexico law and for generic murder.

## ANALYSIS

Defendant Jody Rufino Martinez opposes the United States' proposal to include second-degree murder under New Mexico law in the fourth element of the jury instruction for Count 1, VICAR murder. See Martinez' Proposed Jury Instructions at 62-65 (Martinez Instruction No. 25). Martinez contends that "[s]econd-degree murder under New Mexico law does not substantially correspond to generic murder, and thus its inclusion in [the United States'] instruction [No. 30] is inappropriate." Martinez' Proposed Jury Instructions, Martinez' Proposed Jury Instruction No. 30, at 64 n. 21. In the alternative, Martinez argues that the jury instructions should include all elements of New Mexico second-degree murder. See Martinez' Objections at 2-3. Last, Martinez urges the Court to include instructions both for murder under New Mexico law and for generic murder. See Martinez' Objections at 4-5. The Court will sustain in part the United States Objections on Martinez' proposed jury instructions for No. 25, and adopt Martinez' changes to the United States' Proposed Jury Instructions No. 30.

I.    **NEW MEXICO SECOND-DEGREE MURDER CORRESPONDS TO GENERIC
MURDER.**

The Court concludes that the inclusion of the second-degree murder under New Mexico

law in the fourth element of the jury instruction for Count 1, VICAR murder, is appropriate,

because the scienter requirement for N.M.S.A. § 30-2-1(B) is not narrower than the scienter

requirement for generic murder.  A VICAR violation requires an underlying state law offense, i.e.,

someone "murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting

in serious bodily injury upon, or threatens to commit a crime of violence against any individual in

violation of the laws of any State or the United States, or attempts or conspires so to do."  18

U.S.C. § 1959(a).   Here, Count 1 of the Second Superseding Indictment charges Martinez with

"unlawfully, knowingly, and intentionally murder D.R., in violation of NMSA 1978, Sections 30-

2-1 and 30-1-13.  All in violation of 18 U.S.C. § 1959(a)(1) and 2."   Second Superseding

Indictment at 8.  Establishing that Martinez violated VICAR murder in violation of New Mexico

law requires the United States to prove: (i) that Martinez' conduct constitutes generic murder; and

(ii) that Martinez' conduct also violated New Mexico law.  See United States v. DeLeon, 318 F.

Supp. 3d 1272, 1276 (D.N.M. 2018)(Browning, J.)(concluding that "no matter whether

[defendant] conspired [to commit assault resulting in serious bodily injury in violation of the state

statute,] he only violated VICAR if also he conspired to commit assault resulting in serious bodily

injury, in a generic sense").   "That structure -- identifying conduct that falls within a generic

category, and also violates a state or non-racketeering federal law -- features prominently in federal

racketeering statutes."   United States v. DeLeon, 318 F. Supp. 3d at 1276.  See Scheidler v.

National Organization for Women, Inc., 537 U.S. 393, 409-10 (2003)(analyzing RICO's definition

of racketeering activity and determining that "any act or threat involving . . . extortion, ... which is

chargeable under state law" includes conduct constituting generic extortion that also violates state

law); United States v. Nardello, 393 U.S. 286, 293-94 (1969)(analyzing the Travel Act, 18 U.S.C.

§ 1952, and concluding that its provisions regarding "extortion . . . in violation of the laws of the

State in which committed," 18 U.S.C. § 1952(b)(i)(2), refers to generic extortion that also violates

state law, even if the state law does not use the term "extortion"); United States v. Bagaric, 706

F.2d 42, 63 (2d Cir. 1983)(stating that, "[a]bsent an allegation that the racketeering act is not

prohibited at all under state law," a court, in a RICO prosecution, is not "obliged to charge the

elements of the penal codes of the various states where acts of racketeering occurred" such that

"accurate generic definitions of the crimes charged were sufficient" (emphasis in original)). See

also United States v. Carrillo, 229 F.3d 177, 185 (2d Cir. 2000)(asserting that, notwithstanding

United States v. Bagaric's "theoretical approval," of charging a RICO predicate "by a generic

description rather than giving the jury the elements in full," that "both the text of RICO and VICAR

demand that predicate acts constitute state law crimes"); Teresa Wallbaum, Novel Legal Issues in

Gang Prosecutions, 68 DOJ J. Fed. L. & Prac. 99, 105 (2020)("A predicate offense need not

categorically match the enumerated federal VICAR offense . . . .  Rather, a defendant violates

VICAR when the government can prove that his conduct constituted both a violation of the

enumerated crime described in the VICAR statute and a violation of the state or federal crime

alleged as the VICAR predicate.").[1]

---

[1]As the Fourth Circuit held in United States v. Keene,

Nothing in [section 1959's] language suggests that the categorical approach should
be used to compare the enumerated federal offense of assault with a dangerous
weapon with the state offense of Virginia brandishing. In fact, the most natural
reading of the statute does not require any comparison whatsoever between the two
offenses. By using the verb "assaults" in the present tense, the language requires
that a defendant's presently charged conduct constitute an assault under federal law,
while simultaneously also violating a state law.  The VICAR statute includes no
language suggesting that *all* violations of a state law also must qualify as the

The Court concludes that New Mexico's second-degree murder corresponds to generic murder, and is therefore properly included in the jury instructions. The Tenth Circuit has not stated what the generic murder is in the context of VICAR, but it instructs that the "generic definition of

_____

> enumerated federal offense, a result that would be required under the categorical approach.
>
> . . .
>
> This unambiguous statutory language precludes application of a formalistic, overinclusive categorical approach, and instead holds defendants accountable for their actual conduct as presented to a jury.

United States v. Keene, 955 F.3d 391, 397-98 (4th Cir. 2020).

Martinez cites to Committee responsible for Section 1959. See Martinez' Proposed Jury Instructions at 62 n.18. The Court is reluctant to look at legislative history rather than the statute's plain language, see, e.g., Exxon Mobil Corp. v. Allapattah Servs. Inc., 545 U.S. 546, 568 (2005)(Kennedy, J.)("Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms."); id. ("As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material."); Williamson v. United States, 512 U.S. 594, 602 (1994)(O'Conner, J.)("Without deciding exactly how much weight to give the Notes in this particular situation . . . we conclude that the policy expressed in the Rule's text points clearly enough in one direction that it outweighs whatever force the Notes may have."); nonetheless, some Justices on the Supreme Court of the United States of America still look at legislative history, and so some lower courts do so as well, see, e.g., United States v. Browning, 61 F.3d 752, 756 (10th Cir. 1995)("'[W]e are guided both by the plain language of the statute . . . and by the legislative history of the provision . . . .")(quoting United States v. Di Pasquale, 864 F.2d 271, 279-80 (3d Cir. 1988)). The Ninety-Eighth United States Congress, at its First Congressional Session in 1983, stated that although § 1959 "proscribes murder, kidnapping, maiming, assault with a dangerous weapon, and assault resulting in serious bodily injury in violation of federal or State law, it is intended to apply to these crimes in a generic sense, whether or not a particular State has chosen those precise terms for such crimes." 129 Cong. Rec. 22, 906 (98 Cong. 1st Sess. Aug 4, 1983). "Congress intended section 1959 to apply uniformly across the United States as a federal crime. The predicate requirement was included simply to avoid criminalizing new conduct. Requiring the state predicate to categorically match the enumerated offense would limit the application of section 1959 'to the drafting whims of fifty state legislatures, a result plainly not intended by Congress.'" Teresa Wallbaum, Novel Legal Issues in Gang Prosecutions, 68 DOJ J. Fed. L. & Prac. 99, 105-06 (2020)(quoting United States. v. Le, 316 F. Supp. 2d 355, 360 (E.D. Va. 2004))(footnotes omitted).

murder requires a killer's conduct to at least evince a 'reckless and depraved indifference to serious dangers posed to human life.'" United States v. Castro-Gomez, 792 F.3d 1216, 1216-17 (10th Cir. 2015)(not a VICAR case)(quoting United States v. Marrero, 743 F.3d 389, 401 (3d Cir. 2014)). See United States v. Watts, No. 14-CR-20118-002, 2017 WL 411341, at *10 (D. Kan. Jan. 31, 2017)(Robinson, J.)("According to Tenth Circuit case law, generic murder is defined as intentional killing; killing during the commission of a felony; and killing that, although unintentional, occurs in the course of dangerous conduct that demonstrates a reckless or malignant disregard for serious risks posed to human life.")(citing United States v. Castro-Gomez, 792 F.3d at 1216-17).  New Mexico law defines second-degree murder:

> Unless he is acting upon sufficient provocation, upon a sudden quarrel or in the heat of passion, a person who kills another human being without lawful justification or excuse commits murder in the second-degree if in performing the acts which cause the death he knows that such acts create a strong probability of death or great bodily harm to that individual or another.

N.M.S.A. § 30-2-1(B).  See NMRA UJI Criminal 14-210 (listing four elements for second-degree murder, including that the "defendant knew that [his] [her] acts created a strong probability of death or great bodily harm . . .").  The Supreme Court of New Mexico explains:

> [F]irst-degree murder is a "willful, deliberate and premeditated killing"[].  [N.M.S.A. § 30-2-1(A)].   In contrast, a second-degree murder is murder "committed without such deliberation and premeditation but with knowledge that the killer's acts create a strong probability of death or great bodily harm."  State v. Garcia, 1992-NMSC-048, ¶ 22, 114 N.M. 269, 837 P.2d 862.  If the evidence indicates only "that the accused acted rashly or impulsively, rather than deliberately, and if the accused acted intentionally and without justification or provocation, then the facts would only support second-degree murder."  State v. Adonis, 2008-NMSC-059, ¶ 16, 145 N.M. 102, 194 P.3d 717.

State v. Martinez, No. S-1-SC-37378, 2021 WL 732922, at *9 (N.M. Feb. 25, 2021)(Thompson, J.).

Martinez argues that "the scienter element of New Mexico second-degree murder merely requires that '[t]he defendant knew that [his] acts created a strong probability of death or great

bodily harm,' which is much less than what is allowed under generic murder."  Defendant's

Proposed Jury Instructions at 64 n.21 (quoting UJI 14-210(2) NMRA).  Martinez does not,

however, explain why the scienter for New Mexico's second-degree murder is narrower than the

generic version.  See Defendant's Proposed Jury Instructions, Defense Instruction No. 25, at 64-

65 n.21.  In United States v. DeLeon, No. CR 15-4268 JB, 2020 WL 353856, at *132 (D.N.M.

Jan. 21, 2020)(Browning, J.), on a motion for a new trial, the Court explains:

> The Tenth Circuit instructs that the "generic definition of murder requires a killer's
> conduct to at least evince a 'reckless and depraved indifference to serious dangers
> posed to human life.'"  United States v. Castro-Gomez, 792 F.3d 1216, 1216-17
> (10th Cir. 2015)(quoting United States v. Marrero, 743 F.3d 389, 401 (3d Cir.
> 2014)).  See United States v. Watts, 2017 WL 511341, at *10 ("According to Tenth
> Circuit case law, generic murder is defined as intentional killing; killing during the
> commission of a felony; and killing that, although unintentional, occurs in the
> course of dangerous conduct that demonstrates a reckless or malignant disregard
> for serious risks posed to human life.").  Troup argues that "[g]reat bodily harm is
> not death," but the generic definition of murder does not require that a defendant
> intend to kill.  Troup NTM at 11.  It requires only that the defendant's conduct "at
> least evince a 'reckless and depraved indifference to serious dangers posed to
> human life.'"  United States v. Castro-Gomez, 792 F.3d at 1216-17 (quoting United
> States v. Marrero, 743 F.3d at 401).  Moreover, "malice aforethought" is established
> by showing a "depraved-heart," United States v. Pearson, 159 F.3d 480, 486 (10th
> Cir. 1998), and it "may be established by evidence of conduct which is reckless and
> wanton, and a gross deviation from a reasonable standard of care, of such a nature
> that a jury is warranted in inferring that defendant was aware of a serious risk of
> death or serious bodily harm.'"  United States v. Wood, 207 F.3d at 1228 (quoting
> United States v. Soundingsides, 820 F.2d 1232, 1242 (10th Cir. 1987)).
>
> The Court determines that, although VICAR does not expressly require that
> the Court use a generic murder definition, New Mexico second-degree murder
> corresponds with murder's generic definition.  Second-degree murder under New
> Mexico law requires that the defendant's acts kill another person, and the defendant
> "knows that such acts create a strong probability of death or great bodily harm to
> that individual or another."  N.M. Stat. Ann. § 30-2-1(B).  "Depraved indifference"
> is synonymous with "depraved heart."  Carrie L. Maylor, Recalibrating Depravity
> in a Feingold Regime: Why New York Courts Should Maintain Register's
> Approach to Depraved Indifference in Cases of Murder by Abuse, Cardozo L. Rev.
> 405, 405 n.2 (2007)("The phrases 'depraved indifference,' 'extreme indifference,'
> 'depraved mind' and 'depraved heart' are used interchangeably to describe crimes
> involving depraved indifference, such as depraved indifference murder.").  The
> Tenth Circuit has noted that, in the context of second-degree murder, the "concepts
> of 'depraved heart' and 'reckless and wanton, and a gross deviation from a

reasonable standard of care' are functionally equivalent." United States v. Wood, 207 F.3d at 1228. The Court thus concludes that second-degree murder under New Mexico law -- with its requirement that the defendant "knows that [his or her] acts create a strong probability of death or great bodily harm to that individual or another," N.M. Stat. Ann. § 30-2-1(B), corresponds with the Tenth Circuit's generic murder definition, which requires that the defendant's conduct "at least evince a 'reckless and depraved indifference to serious dangers posed to human life,'" United States v. Castro-Gomez, 792 F.3d at 1216-17 (quoting United States v. Marrero, 743 F.3d at 401). Accordingly, Jury Instruction No. 31's inclusion of the elements of second-degree murder under New Mexico law was not erroneous, and [the defendants] are not entitled to a new trial.

United States v. DeLeon, 2020 WL 353856, at *132. Because Martinez does not articulate why the "scienter element of New Mexico second-degree murder . . . is much less than what is allowed under generic murder," Defendant's Proposed Jury Instructions, Defense Instruction No. 25, at 64 n.21, the Court sees no sound reason to retreat from its conclusion in United States v. DeLeon. Nonetheless, upon thorough reexamination, the Court concludes, again, that scienter requirement for second-degree murder under New Mexico law -- "knows that such acts create a strong probability of death or great bodily harm to that individual or another," N.M.S.A. § 30-2-1(B); see State v. Garcia, 1992-NMSC-048, ¶ 22, 114 N.M. 269, 837 P.2d 862 (holding that a second-degree murder is murder "committed without such deliberation and premeditation but with knowledge that the killer's acts create a strong probability of death or great bodily harm.") -- is not narrower than the Tenth Circuit's requirement for generic murder -- a defendant's conduct must "at least evince a 'reckless and depraved indifference to serious dangers posed to human life,'" United States v. Castro-Gomez, 792 F.3d at 1216-17. See United States v. DeLeon, 2020 WL 353856, at *132; State v. Martinez, No. S-1-SC-37378, 2021 WL 732922, at *9 (describing the intent of second-degree murder). See also United States v. Jones, 873 F.3d 482, 492 (5th Cir. 2017)(concluding that there was sufficient evidence to support a conviction of murder in aid of racketeering -- that is, that the defendant had murdered the victim to benefit the enterprise, in violation of Louisiana's second-degree-murder statute and the federal VICAR statute); United

States v. Houston, 648 F.3d 806, 819-820 (9th Cir. 2011)(holding that the defendants were not

entitled to jury instruction on second-degree murder as possible predicate offense for VICAR

murder charges, because the defendants would have been guilty of VICAR murder even if the jury

had found second-degree murder as the predicate offense instead of first-degree murder); United

States v. Mapp, 170 F.3d 328, 335-36 (2d Cir. 1999)(holding that second-degree murder can serve

as the basis for VICAR conviction because "it is sufficient for the government to prove that the

defendant committed murder -- however that crime is defined by the underlying state or federal

law"); United States v. Slocum, 486 F. Supp. 2d 1104, 1114 n.6 (C.D. Cal. 2007)(Carter, J.)(noting

that "a finding of second-degree murder would also support a VICAR conviction"), aff'd sub nom.

United States v. Houston, 648 F.3d 806 (9th Cir. 2011); Owens v. United States, 236 F. Supp. 2d

122, 138 (D. Mass. 2002)(Young, J.)("The charge at issue, 18 U.S.C. § 1959(a)(1), imposes

liability for murder in aid of racketeering. The statute is not restricted to first or second-degree

murder. Accordingly, inasmuch as the charged offense's elements are concerned, whether the jury

found him guilty of second or first degree murder, [the defendant] violated 18 U.S.C. § 1959(a)(1),

affirmed in part, reversed in part and remanded 483 F.3d 48 (1st Cir. 2007).

Next, Martinez argues that

New Mexico second-degree murder contains the element that "[t]he defendant did
not act as a result of sufficient provocation." [NMRA UJI Criminal §] 14-210(3).
. . . This element has no analogue in the generic offense and effectively converts
New Mexico second-degree murder into what the MPC calls manslaughter.
Compare UJI 14-222 NMRA ("'Sufficient provocation' can be any action, conduct
or circumstances which arouse anger, rage, fear, sudden resentment, terror or other
extreme emotions. The provocation must be such as would affect the ability to
reason and to cause a temporary loss of self control in an ordinary person of average
disposition."), with MPC § 210.3(1)(b) ("Criminal homicide constitutes
manslaughter when . . . a homicide which would otherwise be murder is committed
under the influence of extreme mental or emotional disturbance for which there is
reasonable explanation or excuse. The reasonableness of such explanation or
excuse shall be determined from the viewpoint of a person in the actor's situation
under the circumstances as he believes them to be."). The "generic definition of

murder does **not** include manslaughter as commonly defined, or negligent homicide." <u>VICAR Manual</u> § II.F.2.b, at 41 (emphasis in original); see <u>id</u>. § II.F.2.a, at 39.

Defendant's Proposed Jury Instructions, Defense Instruction No. 25, at 64-65 n.21 (emphasis in the original).  Martinez misreads § 30-2-1(B), however, because § 30-2-1(B) excludes situations where the defendant "act[ed] as a result of sufficient provocation," N.M.S.A. § 30-2-1(B), whereas § 30-2-3 -- voluntary manslaughter -- includes situations where a "defendant acted as a result of sufficient provocation," NMRA UJI Criminal § 14-220(3) (listing the jury instructions for voluntary manslaughter).   Second-degree murder excludes "sufficient provocation":

> Unless he is acting upon sufficient provocation, upon a sudden quarrel or in the heat of passion, a person who kills another human being without lawful justification or excuse commits murder in the second-degree if in performing the acts which cause the death he knows that such acts create a strong probability of death or great bodily harm to that individual or another.

N.M.S.A. § 30-2-1(B).  Voluntary manslaughter, in contrast, "consists of manslaughter committed upon a sudden quarrel or in the heat of passion." N.M.S.A. § 30-2-3.  The jury instructions for voluntary manslaughter explain that the jury must find that the "defendant acted as a result of sufficient provocation . . . ."  NMRA UJI Criminal § 14-220(3).   Accordingly, second-degree murder and voluntary manslaughter are distinct offenses, demarked by when a "defendant acted as a result of sufficient provocation . . . ."  NMRA Criminal UJI § 14-220(3).

Third, Martinez argues that the Court's conclusion in <u>United States v. DeLeon</u> that a VICAR murder can include a second-degree murder instruction is wrong, because the "Court . . . failed to match up the elements of New Mexico second-degree murder with those of the Tenth Circuit's generic depraved heart (or depraved mind) murder."   Martinez' Objections at 4. Martinez argues that, although the "New Mexico second-degree murder definition does *kind of* resemble depraved-mind murder (-ish)," it is actually New Mexico uniform jury instructions for first-degree murder that "meets the depraved heart/mind definition."  Martinez' Objections at 4

(emphasis in the original)(citing NMRA Criminal UJI 14-203).  Even if Martinez is correct that New Mexico's first-degree murder definition meets the depraved heart definition, Martinez misapprehends the inquiry; the inquiry is only whether New Mexico second-degree murder corresponds with murder's generic definition.  In other words, an instruction on New Mexico second-degree murder would be inappropriate only if it is narrower than murder's generic definition, which it is not.  See United States v. DeLeon, 2020 WL 353856, at *132.

## II.   THE COURT WILL USE THE UNITED STATES' ENTIRE JURY INSTRUCTION FOR SECOND-DEGREE MURDER ALONG WITH THE JURY INSTRUCTION FOR SUFFICIENT PROVOCATION.

Martinez argues that, even if the Court decides that New Mexico second-degree murder corresponds to generic murder, the United States omits improperly an element from New Mexico's second-degree murder definition.  See Martinez' Objections at 2-3.  The Court agrees that an additional element is needed, and will add the entire jury instruction for second-degree murder along with the jury instruction for sufficient provocation.  See N.M.S.A. § 30-2-1(B); NMRA UJI Criminal §§ 14-210, 14-222.  The New Mexico Criminal Uniform Jury Instructions define secondary murder:

> For you to find the defendant guilty of second-degree murder [as charged in Count _____], the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.   The defendant killed _____ (*name of victim*);
>
> 2.   The defendant knew that [his] [her] acts created a strong probability of death or great bodily harm to _____ (*name of victim*) [or any other human being];
>
> 3.   The defendant did not act as a result of sufficient provocation;
>
> 4.   This happened in New Mexico on or about the _____ day of _____, _____

NMRA UJI Criminal § 14-210.  The New Mexico Criminal Uniform Jury Instructions define

"sufficient provocation" as:

> any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions. The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition. The "provocation" is not sufficient if an ordinary person would have cooled off before acting.

NMRA UJI Criminal § 14-222.

## III.   THE COURT WILL NOT INCLUDE INSTRUCTIONS FOR BOTH GENERIC MURDER AND NEW MEXICO'S SECOND-DEGREE MURDER.

Last, Martinez argues that the Court should include instructions both for New Mexico's second-degree murder and generic murder, "because the defendant's conduct must meet the definition of both generic murder and the statutory (murder) offense."  Martinez' Objections at 3 (citing U.S. Dep't of Justice Organized Crime & Racketeering Section, Violent Crimes in Aid of Racketeering: A Manual for Federal Prosecutors § II.E, at 22 (Dec. 2006), available at https://www.justice.gov/sites/default/files/usam/legacy/2014/10/17/vcar.pdf (last visited March 10, 2021)("VICAR Manual")).  The VICAR Manual does not state, however, that jury instructions must include both state statutory instructions and the generic instruction; it states only what the Court has concluded already, that the state statutory offense must "fall[] within the generic definition."  VICAR Manual at 22.  Martinez' proposition would create only confusion, and therefore the Court will not include both instructions.

**IT IS ORDERED** that: (i) United States' Proposed Jury Instruction 30 in United States' Proposed Jury Instructions, filed February 16, 2021 (Doc. 138) is adopted in part; (ii) the Defendant's Proposed Jury Instruction 25, in the Defendant's Proposed Jury Instructions, filed February 17, 2021 (Doc. 150), is adopted and rejected in part; (iii) the Court will incorporate all four elements of New Mexico second-degree murder from NMRA UJI Criminal § 14-210; and (iv) the Court will incorporate the definition of sufficient provocation as defined in NMRA UJI

Criminal § 14-222.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred. J. Federici
   Acting United States Attorney
Maria Ysabel Armijo
Randy M. Castellano
Ryan Ellison
   Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

     *Attorneys for the Plaintiff United States of America*

Carter B. Harrison, IV
Nicholas Thomas Hart
Harrison & Hart, LLC
Albuquerque, New Mexico

     *Attorneys for the Defendant Jody Rufino Martinez*